GEORGE SOWERWINE ET AL., APPELLEES, V. CENTRAL IRRI-
GATION DISTRICT, APPELLANT.*

FILED DECEMBER 23, 1909.    No. 15,866.

1. **Waters:** IRRIGATION DISTRICTS: COUNTY BOARDS: POWERS. "An or-
der of the county board establishing and defining the boundaries
of an irrigation district in pursuance of the provisions of section
2, art. III, ch. 93a, Comp. St. (Ann. St., sec. 6823), is conclusive,
at least in a collateral proceeding, on the question whether the
lands included therein will be benefited by irrigation by the sys-
tem therein contemplated; *aliter*, on the question whether any
of such lands cannot, from some natural cause, be irrigated
thereby." *Andrews v. Lillian Irrigation District*, 66 Neb. 461.

2. ——: ——: DETACHING LANDS. "After an irrigation district
has been duly organized, the statutory procedure prescribed in
said chapter for detaching lands, other than those which cannot
from some natural cause be irrigated, is exclusive." *Andrews
v. Lillian Irrigation District*, 66 Neb. 461.

3. **Appeal:** SPECIAL FINDINGS. In a case appealed to this court upon
the special findings of the trial court, this court cannot add to or
take from the language of the trial court or enlarge the scope
of its findings.

4. **Waters:** IRRIGATION DISTRICTS: DETACHING LANDS: EVIDENCE. Where
the owner of land proceeds in equity to have the same detached
from an irrigation district, in order to defeat the jurisdiction
of the county board it must be clearly shown, and in like man-
ner found by the court, that the land embraced within the dis-
trict is in fact such that from some natural cause it is non-
irrigable, or is expressly exempted by statute from the operation
of the law providing for the organization of irrigation districts
and the taxing of lands within the boundary of such district
for irrigation purposes.

APPEAL from the district court for Scott's Bluff county:
HANSON M. GRIMES, JUDGE. *Reversed and dismissed.*

*L. L. Raymond* and *James E. Philpott*, for appellant.

*Wright & Wright*, contra.

FAWCETT, J.

This suit was brought in the district court for Scott's
Bluff county by plaintiffs jointly, who are the separate

* Rehearing denied and case *remanded*.

owners of the lands described in the petition, for the purpose of having said lands detached from the irrigation district of defendant. The allegations in the petition are that all of lot 3 in section 31, lots 5 and 6 in section 32, lot 2 in section 5, and all ·of that part of the S. E. ¼ of the S. E. ¼ of section 31, and lot 1 in section 6, and lots 3 and 4 in section 5, lying and situated north of a line particularly described, "are low, wet and swampy lands, situated near and lying along the south bank of the North Platte river, and that a portion of said lands are now covered with water from natural causes, and all of said lands are totally unfit for irrigation, and it will be necessary to drain the same before the same can be farmed; that all of said lands are so situated that the irrigation of the same or flowing water thereon from defendant's canal will result in great and irreparable injury thereto and to the owners thereof, the plaintiffs herein; and the plaintiffs have no adequate remedy at law; that the defendant has caused taxes to be levied against said lands for irrigation purposes for the years 1903, 1904, and 1905, in the total sum of $724.95, and have caused the same to be entered on the tax rolls of Scott's Bluff county in the manner provided by law, and which taxes now stand of record together with claim for interest and penalities as an apparent lien against said lands and as a cloud on the plaintiff's title thereto, and have levied taxes on said lands for the year 1906, which are not yet made of record in the office of the county treasurer of said county." The prayer is that the lands be detached from said irrigation district; for an injunction enjoining the levying and collection of taxes for irrigation purposes; that the taxes already assessed be declared null and void, and the cloud on plaintiffs' title removed and plaintiffs' title quieted. The answer admits that plaintiffs are the respective owners of the lands set out in their petition; that defendant is an irrigation district; that it has caused taxes to be levied as alleged, and denies generally all allegations in the petition not specifically admitted. And, for further answer,

it alleges: "That at the time and before the organization
of the defendant as an irrigation district, as aforesaid, the
lands set out in plaintiffs' petition were susceptible to
irrigation, and of such character, location, and elevation
as to be, and the said lands were, benefited by irrigation
furnished by the canal or ditch of the defendant, and that
said lands were accordingly, and by and with the knowl-
edge and full consent of the plaintiffs, included in and
made a part of said irrigation district." The pleadings
contain numerous other allegations and denials involving
the question of estoppel, which, for the determination of
this case, we do not deem it necessary to consider. There
was a trial to the court and decree for plaintiffs, based
upon special findings, from which defendant appeals. No
bill of exceptions is presented, defendant basing its claim
for a reversal upon the special findings of the court.

Plaintiffs base their right to the relief demanded upon
section 49, art. III, ch. 93a, Comp. St. 1903, which pro-
vides that in no case shall land, which from some natural
cause cannot be irrigated, be held in any irrigation dis-
trict or taxed for irrigation purposes. The special findings
in the decree are: (1) That the plaintiff, George Sower-
wine, is the owner in fee of the lands claimed by him;
(2) that plaintiff Elizabeth Sowerwine is the owner in
fee of the lands claimed by her; (3) that all of said lands
are included in and are a part of the defendant irrigation
district; (4) as to lot 3 in section 31, lots 5 and 6 in sec-
tion 32, lot 2 in section 5, and all that part of the S. E.
¼ of the S. E. ¼ of section 31, and lot 1 in section 6, and
lots 3 and 4 in section 5, lying and situated north of the
particular line above referred to, the court finds "that
down through the central part of the same, from the west
to the east, is a slough which holds more or less water
during the entire year; that the North Platte river main-
tains its highest stage from about the 1st day of May
until from the middle of July to the 1st of August; that
during high water in the river said slough becomes prac-
47

tically full of water, and the part of the said land involved herein is more or less wet and spongy, and at different places has standing water holes of greater or less dimensions; that during the low water period of the year in the river, from about August to May, said slough becomes practically dry, and the land involved is dry; that the balance of said land is practically all dry and fit to be mowed, and the same has been mowed for hay for a number of years; that during the irrigation season said land is rendered more or less wet by reason of seepage from the central ditch and the laterals therefrom being thrown on the land herein." In its fifth finding the court proceeds to make findings in relation to the question of estoppel above referred to, and then recites: "By their acts in the premises and their personal knowledge they (plaintiffs) ought to be bound by the judgment of the county board in the formation of the defendant district including the lands involved therein, and in good conscience ought to be estopped from complaining at this late date, but under the doctrine laid down in the Custer county case, as well as the case of *Walsh v. Lincoln County*, the board was without jurisdiction to include the lands involved therein in the defendant's district; that the defendant has caused to be levied taxes against said lands for irrigation purposes for the years 1903, 1904 and 1905, in the total sum of $724.95; that the same are null and void because of said land being exempted under the statutes as construed by the supreme court, and it is therefore adjudged that said lands (the lands described in the petition) be, and the same are, hereby detached from said central irrigation district, and the defendant and all persons acting for and on behalf of the defendant district are enjoined from levying any taxes against said land for irrigation purposes; that the said taxes heretofore levied be, and the same are, adjudged to be null and void and no lien on or against said land, and plaintiffs' said lands are quieted in them as against all said taxes."

The case referred to in the findings of the court as "the

Custer county case" is *Andrews v. Lillian Irrigation District* (on rehearing) 66 Neb. 461. The case of *"Walsh v. Lincoln County,"* referred to in the court's findings, is reported as S*tate v. Several Parcels of Land*, 80 Neb. 424. We do not think either of these cases will bear the construction which the trial court seems to have put upon them. In *Andrews v. Lillian Irrigation District* the petition was substantially the same as in the case at bar. It alleged that the lands sought to be detached were low, wet, swampy lands, totally unfit for irrigation, and which required drainage of the water naturally standing thereon before they could be made fit or used for agricultural purposes. The defendant in that case filed a general demurrer to the petition, which was sustained by the trial court. The demurrer, of course, admitted the allegations of the petition as to the character of the lands, and we said: "This, we think, for the purposes of the demurrer, is equivalent to alleging that the lands were nonirrigable; that from natural causes they could not be irrigated by the proposed system of irrigation." In discussing the matter, on page 466, HOLCOMB, J., said: "Section 49 of said chapter provides that in no case shall land, which from some natural cause cannot be irrigated, be held in any irrigation district, or taxed for irrigation purposes. Thus it will be seen that the act under consideration clearly distinguishes between land which would not be benefited by irrigation and such as from some natural causes is nonirrigable. As already shown, whether a particular tract of land will be benefited by a proposed system of irrigation is a question which the legislature has confided to the county board. Whether a particular tract of land from some natural cause cannot be irrigated is a question which goes to the jurisdiction of the county board over such tract and may be raised at any time in a proper case, because section 49, *supra,* expressly denies the jurisdiction of the county board to include such land in an irrigation district, or to tax it for irrigation purposes." In the case at bar the allegation that the lands are

low, wet, swampy lands and will require drainage before they can be made fit for agricultural purposes is expressly negatived by defendant's answer, and is not sustained by the special findings of the court. We do not think a finding that during three months of the year a slough running through the land is practically full of water, and a part of the land involved is more or less wet and spongy and at different places has standing water holes of greater or less dimensions, while during the low water period extending through the other nine months of the year the slough is practically dry and the land involved is dry, can be held to be tantamount to a finding that the lands "are totally unfit for irrigation," as alleged in plaintiffs' petition.

In *State v. Several Parcels of Land*, 80 Neb. 424, referred to in the findings of the court as *Walsh v. Lincoln County*, the lands were under an irrigation ditch which had been constructed before the enactment of the district irrigation law. After the enactment of that law the Suburban Irrigation District filed a claim with the secretary of the state board of irrigation for the appropriation of water to irrigate the lands in controversy, with other lands. Subsequently the order of the county board establishing such district was made. The directors of the Suburban Irrigation District then proceeded to levy taxes upon the lands in controversy. The section of the statute under which the owner of the land claimed exemption was as follows: "Provided, that where ditches or canals have been constructed before the passage of this act of sufficient capacity to water the land thereunder for which the water taken in such ditches is appropriated, such ditches and franchises and the land subject to be watered thereby shall be exempt from the operation of this law." Comp. St. 1903, ch. 93a, art. III, sec. 1. The evidence clearly established the fact that the first ditch had been constructed before the passage of the act; that it was of sufficient capacity to water the land thereunder, and that the land in controversy was under that ditch. In consider-

ing that case we said: "The reasoning of this case (*Andrews v. Lillian Irrigation District*) applies to the question we are considering. If the provision that land which cannot, from any natural cause, be irrigated by a ditch excludes it from the jurisdiction of the county board, certainly the provision that land subject to be watered by a ditch constructed before the passage of the act and of sufficient capacity to water the same shall be exempt from the operation of the law would prevent the county board from passing upon and determining this question." We adhere to both of the cases referred to, but are unable to see how they can be applied to the case at bar. We think the findings of the court in the case under consideration clearly show that this case comes within that class which are for the determination of the board. If it is only during high water that the land is "more or less wet and spongy and at different places has standing water holes of greater or less dimensions" for three months in the year, but during the other nine months is dry, the court cannot say, as a matter of law, that it is nonirrigable, so as to bring it within the rule of *Andrews v. Lillian Irrigation District.*

It is contended by plaintiffs that the only theory on which the court could have made its finding, "that under the doctrine laid down in the Custer county case, as well as the case of *Walsh v. Lincoln County*, the board was without jurisdiction to include the lands involved therein in the defendant district," was to find that the lands by reason of their condition from natural causes were nonirrigable. They add: "And we think that the court's findings show that the land was, in fact, nonirrigable." We are unable to concur in either of these statements. In our opinion the court's findings do not show that the land was, in fact, nonirrigable, and we cannot add to or take from the language of the court, or enlarge the scope of its findings, by construction. In order to defeat the jurisdiction of the county board, it must be clearly shown, and in like manner found by the court, that the lands

embraced within the district are, in fact, nonirrigable. If, under the facts as found by the court, there is any doubt on that subject, such doubt must be resolved in favor of the jurisdiction of the board, and the parties left to the remedy provided by statute. This being, therefore, a case for the consideration of the board, then the order of the county board establishing and defining the boundaries of the district is conclusive, at least in this collateral proceeding, on the question whether the lands included will be benefited by irrigation. In such a case the second paragraph of the syllabus in *Andrews v. Lillian Irrigation District,* 66 Neb. 461, applies: "After an irrigation district has been duly organized, the statutory procedure prescribed in said chapter for detaching lands, other than those which cannot from some natural cause be irrigated, is exclusive."

The judgment of the district court is therefore reversed, and the suit dismissed.

REVERSED AND DISMISSED.