[No. 5724]

WILDER v. SOUTH SIDE IRRIGATION DISTRICT ET AL.

1. STATUTES—*Construction*—To ascertain the legislative intent a statute must be considered as a whole.

2. ——*Construed*—The proviso to section 1 of the act in relation to irrigation districts (Laws 1905, c. 113, Rev. Stat. c. 72, § 3440) does not of its own force, exclude from the proposed district, lands already provided with facilities for their irrigation, which the district is not formed to acquire. If the proceedings for the organization for the district, and the definition of its boundaries, conform to the statute, one entitled to lands of the character described in the proviso to section 1 of the act, is afforded opportunity to object to the inclusion thereof in the district, and if he fails to avail himself of the opportunity afforded by the statute, and permits the district to be so organized as to include such lands, then by force of the provisions made in sections 2, 3, and other sections of the act he is concluded. Any attempt afterwards made to exempt such land from liability for the indebtedness of the district, lawfully contracted, is a collateral attack on what is *res judicata*.

3. EVIDENCE—*Competency*—In a proceeding by an irrigation district under Rev. Stat. §§ 3489-3493, seeking confirmation of a proposed issue of bonds, a decree of the court confirming a previous like issue, is competent evidence of the regular organization of the district.

4. ——*Statutory Proceedings*—In a proceeding under a statute which fails to define or prescribe by what class of evidence the facts in issue may be established, the rules of the common law control.

5. APPEALS—*Harmless Error*, will not reverse.

*Error to Mesa District Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Mr. GEORGE BULLOCK and Messrs. NORTHCUTT & McHENDRIE, for plaintiff in error.

Messrs. GRIFFITH & WATSON and Messrs. LOGAN & MILLER, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The South Side Irrigation District, located in Mesa County, was organized in the Spring of 1909. There-

after proceedings were taken by the district to issue bonds. In August, 1909, a decree was entered by the district court of Mesa County, confirming the regularity of the proceedings creating the district, and establishing the validity of this issue of bonds. Subsequent to this decree, the district took steps for a second bond issue, and thereafter instituted proceedings in the district court to establish the validity of this issue of bonds. In the petition for this purpose, it was alleged that the proceedings relative to the organization of the district, and the validity of the first bond issue had been declared regular and valid by the district court of Mesa County, in a proceeding instituted for that purpose. It was further set out in the petition in the way of a statement of facts, that all proceedings leading up to the second issue of bonds were regular; that is, the petition alleged the various steps taken by the proper authorities of the district necessary to the validity of the second issue of bonds.

Wilder, defendant below, appeared and answered. In his answer he alleged that he was the owner of a tract of land located in the district; that prior to and at the time of the formation of the district, and prior to January 1st, 1905, there had been constructed and was in existence, within the district, an irrigation canal, known as the Nichols Irrigating ditch; that his lands lie under this ditch, and were at the time of the attempted formation of the district, and for many years prior thereto had been, irrigated from this ditch, to which had been decreed an appropriation from the Grand River; and that the district was not created for the purpose of purchasing, leasing or renting this ditch. For a second defense he denied that the district was legally and lawfully organized, and also denied the allegation of the petition with reference to the steps taken as set out in the petition to authorize the second issue of bonds.

On motion of petitioner, the first defense was stricken. The cause was then tried on the remaining issues made by the answer. The findings of fact in issue by the pleadings were in favor of the district, and a decree rendered to the effect that the South Side Irrigation District was and is a legally organized and existing district, and that all of the proceedings of the board of directors relating to the second issue of bonds were regular, and were, therefore, approved and confirmed, and that the bond issue involved would be a legal and binding obligation and indebtedness upon the district and all lands embraced therein.

The defendant Wilder brings the case here for review on error. On his behalf it is contended that the order of the court sustaining the motion to strike his first defense, and in holding that the bonded indebtedness was legal and binding upon all the lands in the district, are erroneous, for the reason that from the defense which was stricken, and the testimony in the case, it appears that the irrigation district was not organized for the purpose of purchasing or in any way acquiring any interest in the Nichols Ditch under which plaintiff in error's lands lie, that these lands are irrigated therefrom, and that this ditch was constructed prior to January 1, 1905. It appears to be conceded by all parties that the irrigation district in question was not organized for the purpose of purchasing, or in any way acquiring, an interest in the ditch under which plaintiff in error's lands lie, that his lands are irrigated from this source, and that this ditch was constructed prior to the passage of the Act of 1905 under which the district in question was organized. Based on these facts, the theory of his counsel is that the statute under which the district was organized, by its own language, exempts the land of plaintiff in error from the operation of the act. This contention is predi-

cated upon section 1 of the act entitled "Irrigation Districts," Laws of 1905, page 246, which is as follows:

"Section 1. (Irrigation District). Whenever a majority of the resident free-holders owning lands in any district desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act, and when so organized, each district shall have the powers conferred, or that may hereafter be conferred, by law, upon such irrigation district; Provided, That where ditches, canals or reservoirs have been constructed before the passage of this act, such ditches, canals, reservoirs and franchises and the lands watered thereby, shall be exempt from the operation of this law, except such district shall be formed to purchase, acquire, lease or rent such ditches, canals, reservoirs and their franchises."

Read literally and alone, this section lends color to the claim of counsel, but every act is adopted as a whole, and in order to ascertain the legislative intent, the courts must consider the entire act.

By section 2 provision is made for initiating proceedings by petition to organize an irrigation district. This petition is filed with the board of county commissioners of the county which embraces the largest acreage of the proposed district. It requires that the petition shall contain a general description of the boundaries of the district intended to be created, and a request that the board establish its boundaries and submit the question of its organization to the qualified electors of the proposed district. Provision is also made for its publication, together with a notice signed by a committee of the petitioners, giving the time and place of its presentation to the board of county commissioners with which the petition is filed.

Section 3 of the act is as follows: "When such petition is presented, and it shall appear that the notice of

the presentation of said petition has been given, as required by law, and that said petition has been signed by the requisite number of petitioners, as required by this act, the commissioners shall then proceed to define the boundaries of said proposed district from said petition, and from such applications for the exclusion of lands therefrom, and the inclusion of lands therein as may be made in accordance with the intent of this act; they may adjourn such examination from time to time, not exceeding three weeks in all, and shall by final order duly entered, define and establish the boundaries of such proposed district; Provided, That said board shall not modify such proposed boundaries described in the petition so as to change the objects of said petition, or so as to exempt from the operation of this act any land within the boundaries proposed by the petition susceptible to irrigation by the same system of water works applicable to other lands in such proposed district, nor shall any land which will not, in the judgment of the board, be benefited by such proposed system, be included in such district, if the owner thereof shall make application at such hearing to withdraw the same.   *   *   *   .   When the boundaries of any proposed district shall have been examined and defined, as aforesaid, the county commissioners shall forthwith make an order allowing the prayer of said petition, defining and establishing the boundaries, and designating the name of such proposed district   *   *   *   ."

The remainder of this section and others immediately following, then make provision for an election for the purpose of determining whether such district shall be organized, the notice required to be given, and other details relative to such an election, and the election of officials to the district, and the canvass of the votes. If the vote is in favor of the organization of the district the board shall so declare, and cause a copy of such order and a certified copy of a plat of the district to be filed with the

county clerk of each county in which any portion of the lands embraced in the district are located. The act also provides for an election to determine the question of the issuance of the bonds for the purpose of constructing or acquiring reservoir sites, water rights, canals, and ditches, and other property necessary to carry out the objects for which the district is organized.

Section 17 provides that such bonds and the interest thereon shall be paid by revenue derived from an annual assessment upon the real property of the district.

Section 50 of the act provides that the board of directors of an irrigation district may commence special proceedings "in and by which the proceedings of said board and of said district, providing for and authorizing the issue and sale of the bonds of said district, whether said bonds or any of them have or have not been sold or disposed of, may be judicially examined, approved and confirmed."

By section 51 it is provided: "The board of directors of the irrigation district shall file in the district court of the county in which the lands of the district or some portion thereof are situated, a petition, praying, in effect, that the proceedings aforesaid may be examined, approved and confirmed by the court. The petition shall state the facts showing the proceedings had for the issue and sale of said bonds, and shall state, generally, that the irrigation district was duly organized, and that the first board of directors was duly elected, but the petition need not state the facts showing such organization of the district, or the election of said board of directors."

By the next section it is provided that the court shall fix the time for the hearing of the petition and shall order the clerk to give and publish a notice which shall state the time and place fixed for the hearing on the petition, and that any person interested in the organization of the district, or in the proceedings for the issuance or sale of

bonds, may on or before the day fixed for the hearing, demur to or answer the petition.

Section 54 of the act is as follows: "Upon the hear-. ing of such special proceeding, the court shall find and determine whether the notice of the filing of the petition has been duly given and published for the time and in the manner in this act prescribed, and shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm, each and all of the proceedings for the organization of said district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order of sale, and the sale thereof.   The court, in inquiring into the regularity, legality or correctness of said proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings; and the court may, by decree, approve and confirm such proceedings in part and disapprove and declare illegal and invalid other or subsequent parts of the proceeding."

It stands admitted that until the proceedings under review were instituted, plaintiff in error never made any effort to have his lands exempted from the burden of paying its pro rata share of the indebtedness incurred by the first issue of bonds, or the burden imposed by the second issue, as the result of the judgment complained of, and that the regularity of the organization of the district was confirmed in accordance with the provisions of the act to which we have referred.   Counsel for plaintiff in error urge that notwithstanding these facts, the proviso in section 1 exempts the property involved from every section of the act, and that it is in no wise affected by any proceedings had in the organization of the district, but by operation of law is exempted from the lien of any

bonded indebtedness created by the district including it. There is no doubt but that it was the purpose of the proviso to exempt lands from the burden of a bonded indebtedness created to furnish water to irrigate lands embraced in an irrigation district which were irrigated from a system in existence when the act took effect, unless the district was formed to acquire or lease such system. This was eminently proper, as lands under a system from which they were irrigated would not be benefited by the construction of another system, and therefore, should not be burdened with an expense for which there was no corresponding benefit. But in what circumstances does the exemption become operative? When are the owners of other lands in the district to be advised that lands claimed to be already irrigated are released from the payment of a pro rata share of indebtedness contracted in the construction of a system and the acquisition of water to irrigate lands in the district? How are they to know what acreage in the district will be subject to the payment of a bonded indebtedness? When will those to whom bonds are offered know what property in the district is pledged for their payment? By what means will the board of commissioners have called to their attention at the hearing before them to establish the district boundaries, that lands already irrigated are to be excluded from the proposed district? All these questions become important in determining the advisability of creating a district, for the obvious reason that if a part of the area of a district is to be exempted from the payment of an indebtedness which must be created in order to construct ditches and acquire water, the pro rata share which must be paid by the owners of the remaining land would be largely increased over what it would be if the entire acreage of the district is liable for such indebtedness. We think provision is made for this information, and opportunity afforded an owner who de-

sires to take advantage of the proviso in section 1, to claim its benefits and thus settle, at the outset of the creation of the district, questions which, if not settled then, would later cause confusion and uncertainty as to what lands would be subject to district indebtedness, and thus render the sale of bonds difficult, if, as contended by counsel for plaintiff in error, lands of the character contemplated by the proviso were exempted without the owner claiming such exemption.

The law requires that a petition to organize a district shall contain a description of its proposed boundaries, and that this petition shall be published at least two weeks in a newspaper of general circulation in the county where it is to be presented, together with a notice of the time and place when it will be presented to the board of county commissioners. By this means all interested are apprised of what lands are to be included in the district, and the time and place when the petition will be considered by the body or tribunal upon which this authority is conferred. If it appears the preliminary steps have been complied with, the commissioners shall then proceed to define the boundaries of the district by excluding such lands included in the boundaries as described in the petition for which application to that end has been presented ''as may be made in accordance with the intent of'' the act; and that any land which, in the judgment of the board, will not be benefited by the proposed irrigation system, shall not be included in the district, if the owner, at such hearing, shall make application to withdraw it. By these provisions opportunity is afforded those who desire to claim the exemption in the proviso of section 1, to appear before the board and have their lands excluded from the district upon proper showing. True, the proviso states that lands of the character therein mentioned shall be exempted from the operation of the law except the district is formed to purchase or rent the ditches, ca-

nals, or reservoirs through which these lands are irrigated; but with express power conferred upon the board of commissioners under section 3, to exempt from the district lands which, in accordance with the intent of the act, shall not be included, and the intent of the act being to exclude lands of the character referred to in the proviso in section 1, we think the purpose of the proviso is to render it obligatory on the board of commissioners to exempt such lands from the proposed district when application to that end is made; and hence, if not made, the owner of such lands waives the right to claim the exemption. This construction renders the provisions of sections 1 and 3 harmonious and consistent. The opportunity was afforded plaintiff in error to have his lands excluded, but he did not embrace it. Whether he might have raised the question in the original proceedings to confirm, we need not determine, as he did not attempt to. He has had his day in court; a tribunal was provided, and a time fixed when and where he could have claimed the benefit of the proviso in section 1. He did not do so, but made default, and the regularity of the organization proceedings were duly confirmed by the judgment of the district court. We think this precludes him from now raising the question of exemption of his property from liability for the legal indebtedness of the district, and that his attempt to do so is a collateral attack on judgments which are *res judicata* of this question.—*Knowles v. New Sweden I. Dist.,* 16 Idaho 217, 101 Pac. 81; *Oregon S. L. R. Co. v. Pioneer I. Dist.,* 16 Idaho 578, 102 Pac. 904.

Error is assigned on the failure of defendants in error to introduce competent testimony to prove the regularity of the organization of the district. The decree in the original proceedings to establish the regularity of the organization of the district and confirm the first bond issue was introduced. We think this was competent and sufficient to prove that the district was lawfully organ-

ized. In the original proceedings in which this decree was rendered the legality and validity of the organization of the district was approved and confirmed. The decree so recites.

For the purpose of proving the qualification of electors who voted at the election for the second bond issue, we think there was some testimony admitted which was not competent. The act does not declare the kind of evidence by which any fact at issue in proceedings authorized by it may be established in a court of justice, and must, therefore, be established in accordance with the common law rules of evidence. *Ahrens v. Board of Directors,* 39 Colo. 409. However, the violation of this rule was non-prejudicial to plaintiff in error. It appears that the whole number of qualified electors entitled to vote at the election for the second bond issue was ten, and that at least six who voted "Yes" possessed the requisite qualifications; so that a majority voted in favor of the bond issue.

The judgment of the district court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.

Decided June 2d, A. D. 1913. Rehearing denied October 8, A. D. 1913.