Argued May 7, affirmed June 29, 1915.

# RATHFON *v.* PAYETTE-OREGON SLOPE IRR. DIST.

(149 Pac. 1044.)

**Waters and Watercourses—Irrigation—Irrigation Districts—Irrigation Improvement Companies — "Public Corporation" — "Quasi-public Corporation."**

1. The irrigation districts provided for by Section 6167 et seq., L. O. L., as amended by Laws of 1911, page 378, are "public corporations," and by the amendment of 1915 (Laws 1915, p. 234), are municipal subdivisions of the state, with the power of self-government and control in all matters relating to the general purpose of their organization, while district improvement companies, the organization of which are authorized by Laws of 1911, page 256, are also "*quasi*-public corporations."

**Statutes—Construction—Intention of Legislature.**

2. A legislative act must be so construed as to make it operative, and to carry out the purposes indicated by the lawmakers.

[As to rules for construing statutes, see note in 12 Am. St. Rep. 826.]

**Waters and Watercourses—Irrigation District—Inclusion of Land in Improvement District—Statutes.**

3. Section 6167 et seq., L. O. L., as amended by Laws of 1911, page 378, provides for the organization of irrigation districts on proposal of 50 or a majority of the holders of title to lands susceptible of irrigation from common sources and by the same system, and also provides that there shall be excluded from any such district lands already irrigated or entitled to be irrigated from any source or by another system of irrigation works. Laws of 1911, page 256, provides for the incorporation of land owners as improvement companies, and that on such incorporation and record of notice thereof, the debts of such corporation shall be a prior lien on the lands described in the notice. Plaintiff's lands were included in an irrigation district against his petition after he had become a member of a district improvement company, whose members, including himself, had executed and recorded the notice subjecting their land to the liabilities of the corporation, among which were bonds sold aggregating $55,000. *Held*, that plaintiff's land was not included in the district and not open to its assessments, as the legislature by the acts providing for irrigation districts and improvement companies did not intend to provide for separate *quasi*-public corporations to exercise the same delegated powers within the same area for a similar purpose at the same time, since if the irrigation district had power to tax plaintiff's land and sell the same on execution for nonpayment, nothing would be left to satisfy the liabilities of the district improvement company of which plaintiff was a member, and the obligation of its contracts would be impaired in violation of Article I, Section 21, of the Constitution.

Waters and Watercourses—Irrigation District—Exclusion of Lands —Estoppel.

4. Plaintiff, member of a district improvement company organized under Laws of 1911, page 256, was not estopped to contend that his lands were not rightfully included within an irrigation district, organized under Section 6167 et seq., L. O. L., as amended by Laws of 1911, page 378, merely because he did not appeal from the order of the board of directors of the irrigation district denying his petition for exclusion, since the irrigation district law (Laws 1911, p. 402, Section 33) provides for no appeal from such an order, while the question presented by plaintiff's petition was not determined in the suit brought under Section 33 by the directors of the irrigation district to have the organization of the district declared valid.

[As to petitioner for organization of irrigation district as "freeholder," see note in Ann. Cas. 1913D, 335.]

From Malheur: DALTON BIGGS, Judge.

In Banc. Statement by MR. JUSTICE BEAN.

This is a suit in which the plaintiff, D. W. Rathfon, seeks to enjoin the defendant, Payette-Oregon Slope Irrigation District, and W. H. Lucraft, a purchaser at a sale for taxes levied upon the district, from perfecting such sale and asserting any rights thereunder, and to exclude therefrom certain of the plaintiff's lands and declare the same in no way obligated by reason of any bonds or other indebtedness, liens for taxes or otherwise, in the irrigation district. The plaintiff's lands, already mentioned, to wit, the northeast quarter of section 16, township 16 south, range 47 east, Willamette Meridian, containing 160 acres, are included within the Snake River District Improvement Company, a corporation organized under the provisions of Chapter 172, General Laws of Oregon, 1911, The defendant irrigation district is a corporation organized under the irrigation district laws of Oregon (Sections 6167 et seq., L. O. L., as amended, Chapter 223, Gen. Laws of Or. 1911, p. 378). The trial court rendered a decree in favor of the plaintiff and defendants appeal. AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Julien A. Hurley.*

For respondent there was a brief with oral arguments by *Mr. John L. Rand* and *Mr. William H. Brooke.*

MR. JUSTICE BEAN delivered the opinion of the court.

The pleadings admit, and the evidence shows, that the district improvement company was organized prior to the irrigation district, and the articles of incorporation and notice provided by Chapter 172 were recorded in the office of the county clerk before any action was taken by the irrigation district. The defendants rely upon the defense that plaintiff is estopped from denying that his land is included within the irrigation district, and from denying that he is obligated by reason of the fact that confirmation proceedings have been had by the irrigation district. This states in brief the issues involved upon this appeal. Several errors are assigned, but all may be considered in one group; the nature of the assignments being that a decision should have been rendered in favor of the defendants instead of plaintiff.

1, 2. The improvement company filed a notice in the office of the county clerk to the effect that certain lands, including the plaintiff's, were contained within the area embraced by the district improvement company and subject to the obligations of that company. Afterward this company proceeded to procure its water right, and at the time of the trial had a complete system, satisfactory to the plaintiff and sufficient to properly irrigate his land. Plaintiff asserts that the irrigation district was organized without his knowl-

edge, and that his lands were included therein and confirmation proceedings had all unknown to him. An irrigation system was also completed by the irrigation district. At the time of the confirmation proceedings mentioned (see *Board of Directors* v. *Peterson,* 64 Or. 46 (128 Pac. 837, 129 Pac. 123), it appears that it was considered by the officers of the irrigation district that the lands of plaintiff were not permanently included within the district. It appears from the transcript in that case that the contract for the sale of bonds contained the following provision:

"And it is also understood and agreed that in determining the acreage entitled to water from said system at the date hereof the northeast quarter of section 16 in township 16 south, range 47 east, has not been included, and if said lands remain in the district, then the first party shall be entitled to bonds at the rate aforesaid for said land, the same to be delivered on October 1, 1912, and in that event the amount of bonds to be placed in escrow shall be reduced accordingly."

It is perhaps necessary to consider the objects and purposes of the irrigation district and the district improvement laws. The irrigation law was enacted in 1895 (see Gen. Laws 1895, p. 13, Section 6167 et seq., L. O. L.), the title thereof being as follows:

"To provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property and for the distribution of water thereby for irrigation purposes, and for other and similar purposes."

The title of the district improvement law of 1911 is as follows:

"To enable land owners to incorporate themselves for the purpose of irrigation or drainage, defining their

corporate powers, regulating the manner of issuing bonds, making the debts of said corporation a lien on the land of said owners and fixing the organization and annual license fees of such corporations.''

The irrigation district law also has a provision for drainage. The object and purpose of the two acts are apparently the same, that of improving the arid lands of the state. The essential difference between the two organizations is that in the district improvement law the inclusion of land in the first instance is entirely voluntary, whereas in the irrigation district law, 50 or a majority of the voters qualified by law to vote at an irrigation election may include therein the land of the remaining land owners against their will, provided the land is not legally entitled to be excluded. The irrigation districts under the act governing their organization are public corporations, and by the amendatory act of 1915 are designated as municipal subdivisions of the state having the power of self-government and control in all matters pertaining to the general purpose for which they are organized. District improvement companies are also *quasi*-public corporations. It is a general rule of statutory construction that a legislative act shall be so construed as to make the same operative and carry out the purposes indicated by the lawmakers. Both of these acts should be so interpreted, having due regard to all the provisions thereof, in order to give them full force and effect: *Wilder* v. *Board of Directors,* 55 Colo. 363 (135 Pac. 461, 463).

3. It is the position of plaintiff that there cannot be at the same time within the same territory two municipal corporations exercising the same powers, jurisdictions and privileges, and they cite 1 Dillon, Mun.

Corp. (4 ed.), Section 184. A conflict arises as to whether the land of plaintiff is included within the irrigation district or within the district improvement company. It involves the construction of the two acts, particularly the irrigation district law, and resort must be had to the facts to determine where the land in question properly belongs. The contention of plaintiff is that, the land being first included within the district improvement company, any attempt made by the irrigation district to include the land therein was without jurisdiction and void. This was upheld by the Circuit Court.

The irrigation district law (Section 6167, L. O. L., as amended Laws 1911, p. 378), in so far as it is deemed material to this case, provides that whenever 50 or a majority of the holders of title to lands susceptible of irrigation from common or combined sources and by the same system of works desire to provide for the irrigation of the same, they may propose the organization of an irrigation district. Section 6168 directs that for the purpose of organizing such a district a petition shall be presented to the County Court setting forth and particularly describing the boundaries of the proposed irrigation district, and stating the purpose. It requires the petitioners to furnish a bond for costs in case the organization is not effected; requires the publication thereof, and directs that on a final hearing the County Court—

"may make such changes in the proposed boundaries as the court may find proper, and shall establish and define such boundaries; provided, that no land included within the limits of any city or town shall be included in any irrigation district; that said court shall not modify said boundaries so as to except from the operation of this act any territory within the bound-

aries of the district proposed by said petitioners which is susceptible of irrigation by the same system of works applicable to other lands in such proposed district, nor shall any lands which will not, in the judgment of said court, be benefited by irrigation by said system, be included within such district.''

The section further provides that any person whose lands are susceptible of irrigation from the same sources may, in the discretion of the court, upon written application, have his lands included in the district. On final hearing the court shall make and enter an order determining whether the requisite number of owners of the land within such proposed district shall have petitioned for the formation thereof, and whether the petition and notice of the time of presentation thereof shall have been duly published, and said order shall be conclusive evidence of the facts found by the court. The act then makes provision for dividing the district into divisions for the purpose of elections; provides in detail the manner of elections; authorizes the formation of a general plan of proposed works to be acquired by lease or purchase; that the cost thereof be estimated; and for the issuance and sale of bonds to provide funds therefor. In Section 6186, as amended in 1911, page 389, we find the provision:

''That in no case shall any land be taxed for irrigation purposes under this act which from any natural causes cannot be irrigated or which is incapable of cultivation.''

—and the further provision:

''That where ditches, canals, reservoirs or other irrigation works or pumping plants are actually constructed and in operation at the time of the organization of the irrigation district, the lands actually irrigated therefrom at that time shall not be liable to

be taxed under the provisions of this act, except for benefits accruing thereto by reason of the construction or maintenance of a drainage system or works by said district, until such time as such irrigation district shall purchase, lease or acquire, by condemnation or otherwise, such ditches, canals, reservoirs, pumping plants or other works, including water rights; provided, however, nothing in this act shall inhibit the board of directors from at any time entering into a contract respecting any lands within said district exempting such lands from liability under this act except from debts already incurred, upon condition that the district be exempted from any liability or duty to furnish water or other benefit to such lands."

Section 25 of the amendatory act authorizes the boundaries of any irrigation district to be changed, and tracts of land which were included therein to be excluded therefrom—

"but neither such change of the boundaries of the district nor such exclusion of lands from the district shall impair or affect its organization, or its right in or to property, or any of its rights or privileges of whatever kind or nature; nor shall it affect, impair, or discharge any contract, obligation, lien, or charge for or upon which said district was and may become liable or chargeable, had such change of its boundaries not been made, or had not such land been excluded from the district."

It provides for notice to be given in case of petition for such exclusion, for a hearing by the board of directors, and for objections to be made to said petition. Subdivision (d) of said section further directs the manner of hearing and the authority of the board in the matter of exclusion of land. It provides:

"That it shall be the duty of said board to so order, upon petition therefor, * * that all lands so petitioned to be excluded from said district shall be

excluded therefrom which cannot be irrigated from or which are not susceptible to, or would not by reason of being permanently devoted to uses other than agricultural, horticultural, viticultural or grazing, be directly benefited by the actual irrigation of the same from a common source, or by the same system of works with the other lands of said district, or from the source selected, chosen or provided, or the system adopted for the irrigation of the lands of said district, or which are already irrigated, or entitled to be irrigated, from another source or by another system of irrigation works.''

Subdivision (e) of this section provides that if there be outstanding bonds of the district at the time of filing said petition, the holders of said bonds may give their assent to the exclusion of any such lands from a district by order of said board or by the decree of the Circuit Court as hereinafter provided; that if said lands are so excluded they shall be released from the lien of said bonds.  Subdivision (f) states that, notwithstanding the lands may be excluded, the district shall remain an irrigation district to every intent and purpose as though said lands had not been excluded.

Turning to the district improvement law of 1911, page 256, we find that any number of land owners, not less than three, may incorporate and file articles of incorporation for the purpose of improvement of the lands by irrigation or drainage, or both.  Section 5 thereof provides that, upon filing the articles of incorporation, the owners of all the lands described in the articles shall make, subscribe and acknowledge, before some person authorized to take the acknowledgment of deeds, a notice—

''to whom it may concern that the lands described in said notice will be improved by irrigation or drainage or both by said corporation under the provisions of

this act.   Said notice shall be recorded in the office where deeds and other instruments affecting the title to real property are recorded, of the county or counties where the land is situated.   From and after the recording of said notice all the debts and obligations of said corporation theretofore or thereafter created shall be a lien upon all the land described in said notice prior to every lien attaching to said land subsequent to the date of recording said notice, except state, county and school taxes, whether such debt or obligation of said corporation be in existence at the time such later lien attaches or be created afterward, and said lien shall not be personal, but shall be an obligation upon the land and shall run with the land.''

The act confers upon such corporation the power of eminent domain, and enumerates the manner of the organization, powers and duties of officers, etc.

From the provisions of the acts to which we have referred at some length, it will be noticed that their objects and purposes are identical.   When carried out, they reach the same end simply by a different route. It is shown and should be borne in mind, that prior to the organization of the irrigation district, the district improvement company was organized, and the owners of land, including the plaintiff, Rathfon, executed and recorded the notice provided for in the act, and thereby subjected their land to the liabilities of the corporation, among which were bonds issued and sold, amounting to the sum of $55,000.   This solemn contract executed under the provisions of the law must be taken into consideration in this case.   The Constitution of this state (Article I, Section 21) provides that:

''No *ex post facto* law, or law impairing the obligations of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in

this Constitution; provided, that laws locating the capital of the state, locating county seats, and submitting town and corporate acts, and other local and special laws, may take effect or not, upon a vote of the electors interested."

Hence it is necessary to inquire whether or not by the two acts the legislature intended to provide for the creation of two separate *quasi*-public corporations for the purpose of exercising the same delegated powers within the same area, for a similar purpose, at the same time. This case is an illustration of the rule that such cannot be done without the existence of chaos: 1 Dillon, Mun. Corp. (4 ed.), § 184; *In re Madera Irr. Dist.*, 92 Cal. 296 (28 Pac. 272, 675, 27 Am. St. Rep. 106, 14 L. R. A. 755); *Straw v. Harris*, 54 Or. 424 (103 Pac. 777). If the irrigation district has full power to tax the lands of plaintiff and sell the same upon an execution for the nonpayment thereof, then nothing will be left to satisfy the liabilities of the district improvement company's indebtedness, and its obligations must necessarily be impaired. In the case of *In re Sanitary Board*, 158 Cal. 453 (111 Pac. 368), in referring to this question, it is said:

"These rules do not rest upon any theory of constitutional limitation. In the absence of any constitutional restriction, the legislature has absolute power over the organization, the dissolution, the extent, the powers and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government."

The question as to the effect the exclusion of plaintiff's lands from the district might have upon the bonds of the irrigation district, which have been issued, need not here be determined, as the bondholders are not parties to this suit. From the statement

made above, however, it will be noticed that at the time of the execution of the contract for the sale of the bonds and the purchase of the irrigation works there was some question raised as to whether or not plaintiff's lands would be excluded or included from the district, so the purchasers of the bonds had notice of the proceedings. It appears from the record herein that the attorney in fact for the plaintiff forwarded to the County Court of Malheur County a petition on behalf of plaintiff, Rathfon, showing that his lands were included within the district improvement company, and asking that the same be excluded from the irrigation district. As we understand the record, it appears that in order not to delay the organization of the irrigation district, the petition for the exclusion of plaintiff's lands was held in the hands of the county clerk in abeyance, without being marked "Filed," until March 9, 1912. It is in evidence that it was then the assurance of the attorney for the irrigation district that after the district was organized the land should be excluded therefrom. Afterward a similar petition was presented to the board of directors of the irrigation district, and it was denied. Plaintiff alleges that his land was fraudulently included within the irrigation district.

4. It is suggested by counsel for defendants that plaintiff is estopped from contending that his lands are not rightfully included within the irrigation district, for the reason that he did not appeal from the order of the board denying his petition therefor. The irrigation district law of 1911, Section 33, provides for no appeal from such an order, and specially authorizes the board of directors to bring a suit to determine the validity of the action of the County Court and various

orders of the board of directors of said irrigation district including or excluding any lands in or from the district and various other orders. Section 34 of the act authorizes any assessment payer or other interested person to bring a like proceeding in the Circuit Court in the event that the board of directors do not bring such proceedings within 30 days after the entry of the order or performance of any acts enumerated in Section 33.

The question therefore arises as to whether the proceedings relating to plaintiff's lands were involved in the suit, brought by the directors of the irrigation district to have the organization of the district declared valid, which was appealed to this court. There is no question but that the district was regularly organized and the bonds regularly issued. Such proceedings are unquestioned in this case, the only question being as to whether or not plaintiff's lands are included in the district. We are relieved from examining the record to ascertain whether this question was involved in the suit referred to by the stipulation of the parties to this proceeding, found on page 77 of the transcript of evidence, which is to the effect that it is admitted by defendants that plaintiff's petitions for the exclusion of lands, Exhibits 8 and 11, filed in the County Court of Malheur County, Oregon, "were not included in the determination in the suit" in the Circuit Court or Supreme Court: See *Sowerwine* v. *Central Irr. Dist.,* 85 Neb. 687 (124 N. W. 118), which is somewhat in point. The plaintiff did not neglect to make application to the proper authorities to have his land excluded, and in this respect the case differs widely from that of *Wilder* v. *Board of Directors,* 55 Colo. 363 (135

Pac. 461, 463). . The defendant district should bear the burden of the irrigation system without assistance from plaintiff's land which should be excluded therefrom.

It follows from the plain direction of the legislative enactments that the decree of the lower court should be, in all things, affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

Embodied in Chapter 172 of the Laws of 1911 is a procedure whereby any number of land owners, not less than three, may incorporate themselves for the purpose of irrigating or draining, or irrigating and draining, their own lands in the manner therein prescribed. Having executed the required articles, wherein, among other things, the particular description of the lands embraced in the project is set out, the owners are required unanimously to sign and acknowledge a notice to whom it may concern that the realty included in the scheme will be improved by irrigation or drainage, or both. Upon filing the notice for record like a deed to real property, the corporation is authorized to incur debts and obligations which shall constitute liens to run with the land. Membership in the concern depends upon ownership of realty affected by the undertaking. Generally, the institution is authorized to sue and be sued, to enter into contracts, to exercise the power of eminent domain for the purpose of carrying out its objects, to fix rates, levy assessments and issue bonds. The general design is to provide for the organization of a private corporation for the purposes detailed above. At the same session of

the legislature Chapter 223 was enacted, providing for the organization of irrigation districts, under the supervision of the County Court, on the petition of 50 or a majority of the holders of title to land susceptible of irrigation from a common source. A prominent feature of this system is an election upon published notice under the supervision of the County Court to determine whether the district shall be organized, which, being favorable, empowers the corporation to tax the property within its territory, to issue bonds when authorized by an affirmative vote of the electors within the district, and generally to carry on business much the same as the private corporation, already mentioned, as organized under Chapter 172. The defendant was called into existence by a vote of the freeholders of its district. It has taken proceedings that resulted in a sale of the plaintiff's land for the payment of an assessment which it is said to have levied thereon. The individual defendant Lucraft is the purchaser at that sale. The plaintiff, asserting that he is a member of a private corporation known as the Snake · River District Improvement Company, which includes his lands, and which was organized under Chapter 172, *supra,* prior to the formation of the defendant irrigation district, claims that his realty is exempt from the authority of the defendant, and asks that the assessment be set aside and his property excluded from the boundaries of the defendant district. The defendant, after making some denials, avers its organization, the publication of notice thereof, and the election resulting favorably thereto, all with the knowledge of the plaintiff, claiming as a result that he is estopped thereby. A further matter in estoppel is based upon a proceeding under the statute authorizing the institution of the

defendant, whereby the Circuit Court in the case of *Board of Directors of the Payette-Oregon Slope Irr. Dist.* v. *Peterson,* 64 Or. 46 (128 Pac. 837, 129 Pac. 123), determined the regularity of the organization of the defendant and its issuance of bonds. The new matter of the answer is denied by the reply. From a decree for the plaintiff the defendants appeal.

The question here to be determined is whether or not the plaintiff's land is subject to taxation at the hands of the defendant irrigation district. The claim of the defendants is either valid *in toto* or wholly void. The plaintiff is either entitled to have the proceedings under which his land was sold utterly disregarded, or he is subject to pay the amount required for redemption, in default of which he must lose his land. His contention is that the Snake River District Improvement Company, which he assisted in organizing, is a municipal or public corporation possessing governmental powers, and, being prior in time of organization, is paramount to and exclusive of the irrigation district which he likewise styles a public corporation. His theory is that two public corporations exercising the same functions cannot exist in the same territory nor exercise authority over the same persons or things. Whatever may be said of the Snake River District Improvement Company, it is clearly not a municipal nor public corporation. It was formed by the voluntary unanimous acts of the corporators. It exists solely for private purposes, the improvement of the lands of the individual corporators. It does not possess the power of taxation. Like any other private corporation it has the power to assess and collect dues from its members, enforcing them as provided in Section 9, Chapter 172, *supra,* by a foreclosure

suit in equity.   The burden imposed upon the lands is the result of the voluntary contractual action of persons directly interested in the result.   The corporation under Section 12 of the act must pay to the Secretary of State an organization fee and an annual license fee like any other private corporation.   These .characteristics serve to exclude the Snake River District Improvement Company from the category of a municipal or public corporation, whatever may be said of the defendant institution.   On the other hand, referring to Chapter 223 of the Laws of 1911, we find provided in Section 6167, L. O. L., as amended by the latter act:

"Whenever fifty, or a majority of the holders of title to lands susceptible of irrigation from a common source or combined sources and by the same system or combined systems of works desire to provide for the irrigation of the same, they may propose the organization of an irrigation district, under the provisions of this act, and when so organized such district shall have the powers conferred, or that may hereafter be conferred, by law, upon such irrigation districts."

The rule for inclusion of lands as thus defined is that they must be susceptible of irrigation from a common source or combined sources, and by the same system or combined systems of works.   The exceptions to this general rule are found in the following language quoted from Section 6168, L. O. L., as amended:

"Provided, that no land included within the limits of any city or town shall be included in any irrigation district; that said court shall not modify said boundaries so as to except from the operation of this act any territory within the boundaries of the district proposed by said petitioners which is susceptible of irrigation by the same system of works applicable to other lands in such proposed district, nor shall any lands which

will not, in the judgment of said court, be benefited by irrigation by said system, be included within such district.''

What may be termed a *quasi* exception is also found in Section 6186, treating of the assessment of taxes upon property within the district as follows:

''Provided, that in no case shall any land be taxed for irrigation purposes under this act which from any natural causes cannot be irrigated or which is incapable of cultivation; and provided further, that where ditches, canals, reservoirs, or other irrigation works or pumping plants are actually constructed and in operation at the time of the organization of the irrigation district, the lands actually irrigated therefrom at that time shall not be liable to be taxed under the provisions of this act, except for benefits accruing thereto by reason of the construction or maintenance of a drainage system or works by said district, until such time as such irrigation district shall purchase, lease or acquire, by condemnation or otherwise, such ditches, canals, reservoirs, pumping plants or other works, including water rights.''

Again in Section 6179, as amended, in speaking of the board of directors, this language is used:

''Said board shall also have the right to acquire, either by lease, purchase, condemnation, or other legal means, all lands and waters and water rights, rights of way and other property, including canals and works constructed and being constructed by private owners, necessary for the construction, use, supply, maintenance, repair and improvement of any canal or canals and works proposed to be constructed by said board, and shall also have the right to so acquire lands and all necessary appurtenances for reservoirs for the storage of needful waters, or for any other purpose reasonably necessary for the purpose of said district. The property, the right to condemn which is hereby given shall include property already devoted

to a public use which is less necessary than the use for which it is required by the district, whether used for irrigation or any other purpose. * * The use of all water required for the irrigation of the lands of any district formed under the provisions of this act, together with all water rights and rights to appropriate water, rights of way for canals and ditches, sites for reservoirs and all other property required in fully carrying out the provisions of this act is hereby declared to be a public use more necessary and more beneficial than any other use, either public or private, to which said water, water rights, rights to appropriate water, lands or other property have been or may be appropriated within said district to an extent less than the whole thereof."

The act under which the Snake River District Improvement Company was formed is merely cumulative legislation on the subject of the formation of private corporations. Everything that could be accomplished by that act could have been effected by a corporation organized under previous legislation. Designedly the enactments under which the Payette-Oregon Slope Irrigation District was formed is wider in its scope, and gives to such an institution far greater and more comprehensive powers than the other act referred to. The authority exercised by the defendant is based upon the will of the people in establishing a district susceptible of irrigation from a common source. Its sanction is visited upon the willing and the unwilling, provided a majority of the voters so direct. Its organization is carried on under the supervision of a judicial tribunal, the County Court. It possesses the power of taxation and its monetary exactions promulgated under that authority are enforced by the tax collectors at the same time and in the same manner as state and county taxes are collected. It is plain that if the plaintiff had so

desired, he might have petitioned for the organization of such a district as the defendant. Although he may have provided through his private corporation or on his own individual resources for the irrigation of his land, he was eligible to vote for the formation of the defendant institution. Being thus qualified to enter into it voluntarily, he is subject to the majority action of other landholders similarly situated. In the exercise of its police power the legislature has provided against the possibility of a small minority escaping its just contribution to the public good by the mere organization of an inadequate scheme sufficient only to comply with the bare letter of the law. The act under which the defendant was organized requires that:

"The court shall in all actions or suits or other proceedings take judicial knowledge of the organization of, and boundaries of all irrigation districts which have been heretofore or may be hereafter organized under the provisions of this act": Section 6169, L. O. L., as amended:

The same section provides for a contest of the election on organization by any person owning property within the proposed district liable to assessment. It requires that the contest shall be instituted within 60 days after the canvass of the vote and the announcement of the result by the County Court, and declares that:

"After the expiration of said period of sixty days no action or suit shall be commenced or maintained or defense made affecting the validity of the organization of any irrigation district organized under the provisions of this act."

The whole substance of the plaintiff's complaint is bound up in the sufficiency or nullity of the defendant

76 Or.—40

district, as affecting his lands. In several cases we have held that this question cannot be raised nor decided by injunction: *Bennett Trust Co.* v. *Sengstacken,* 58 Or. 333 (113 Pac. 863); *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15); *Tyree* v. *Crystal District Improvement Co.,* 64 Or. 251 (126 Pac. 605).

The act authorizing the existence of the defendant establishes a procedure for the subsequent exclusion of lands rightfully included in the first instance. The owner of realty who desires to have the same excluded is required to petition the board of directors for that purpose. Notice must be given by publication in some newspaper, requiring persons objecting to the same to show cause why it should not be granted. The exclusion of such land is left to the discretion of the board as the best interest of the district shall appear to them; but with this proviso appearing in subdivision (d) of Section 25, Chapter 223, Laws of 1911:

"Provided, that it shall be the duty of said board to so order, upon petition therefor, as aforesaid, that all lands so petitioned to be excluded from said district shall be excluded therefrom which cannot be irrigated from or which are not susceptible to, or would not, by reason of being permanently devoted to uses other than agricultural, horticultural, viticultural or grazing, be directly benefited by the actual irrigation of the same from a common source, or by the same system of works with the other lands of said district, or from the source selected, chosen, or provided, or the system adopted for the irrigation of the lands of said district, or which are already irrigated, or entitled to be irrigated, from another source or by another system of irrigation works."

The complaint was amenable to the general demurrer because it does not show that the plaintiff's lands come within any of the exceptions mentioned.

It is not within the limits of any city or town.   It is not impossible to irrigate it.   On the contrary, it appears clearly in the testimony, and is not contradicted by the complaint, that plaintiff's holdings are susceptible of irrigation from a common source applicable to other lands within the project of the defendant.   The complaint does not show, either, that the plaintiff's realty was actually irrigated at the time of the organization of the defendant district.   On this point the testimony unquestionably shows that the land has not, even to the time of the hearing, been irrigated from any source.   This excludes it from the exception against taxing lands actually irrigated.

Mention is made of an application of the plaintiff to have his lands excluded, but this was not prosecuted beyond the action of the board of directors, and even if he had shown that his lands were already irrigated, or entitled to be irrigated, by any source or from another system of irrigation works, this would not exempt him from obligation to pay existing liens or indebtedness, for it is provided in subdivision (i) of Section 25, *supra:*

"Nothing in this act provided shall, in any manner, operate to release any of the lands so excluded from the district from any obligation to pay, or any lien thereon, of any valid outstanding bonds, or other indebtedness of said district at the time of the filing of said petition for the exclusion of said lands, but upon the contrary said lands shall be held subject to said lien, and answerable and chargeable for and with the payment and discharge of all of said outstanding obligations at the time of the filing of the petition for the exclusion of said land, as fully as though said petition for such exclusion were never filed and said order or decree of exclusion never made; and for the purpose of discharging such outstanding indebtedness, said

lands so excluded shall be deemed and considered as part of said irrigation district the same as though said petition for its exclusion had never been filed or said order or decree of exclusion never made and all provisions which may have been resorted to, to compel the payment by said land of its quota or portion of said outstanding obligation, had said exclusion never been accomplished, may, notwithstanding said exclusion, be resorted to to compel and enforce the payment on the part of said land of its quota or portion of said outstanding obligations, of said irrigation district for which it is liable, as herein provided.''

In brief, the organization of a district like the defendant is a proper exercise of the power of the people, manifested by an election held under the forms of law for that purpose. It voices the greatest good for the greatest number, and cannot be obstructed by any dog-in-the-manger policy of a minority. The plaintiff had his opportunity to contest the validity of the corporation, and the election resulting in its organization, at any time within 60 days after the result of the vote was declared. He did not avail himself of that privilege so far as the record discloses. Under the terms of the statute this concludes him. Moreover, as disclosed by the record, acting under the authority of the statute, the directors instituted a suit to determine the validity of the organization of the defendant and its right to issue bonds. By virtue of the law in question, the plaintiff had a right to appear in that procedure and again contest the regularity of the defendant organization, including its right to tax his holding. He suffered that opportunity to pass. He availed himself of the right to petition for the exclusion of his land, and his petition was denied. He has had his day in court on all these several occasions, and it is too late now, and the procedure in this case is unavailing, as we have

seen, to test the questions he would raise.   He had a right to employ as many private means as he chose to irrigate his land; but this does not exclude the right of  the people who live under similar conditions to make him contribute ratably to the larger and more comprehensive scheme of general irrigation.   The act under which the defendant operates declares the use of water in which it engages paramount to every other use.   It authorizes the condemnation of such works as the Snake River District Improvement Company is shown to have contemplated.   Whether we consider the corporations public or private, they are clearly in different classes so far as their organization is concerned.   The legislative power, as well it might, has vested  the defendant corporation with greater and more extensive power than that possessed by the improvement company inaugurated by the plaintiff and his associates.   The latter must yield to the greater authority of the defendant district.   These considerations lead to a reversal of the decree of the Circuit Court, without prejudice to the right of the plaintiff to redeem his land from the effect of the sale as permitted by the statute.

For these reasons I dissent from the majority opinion.