[Argued May 29, 1893; decided July 10, 1893.]

## NICKUM v. GASTON.

[S. C. 33 Pac. Rep. 671.]

1. VENDOR AND PURCHASER— LAND SOLD FOR TAXES— PURCHASE BY OWNER— PRIOR LIENS NOT AFFECTED.— An owner or mortgagor, or his successor in interest, remaining in possession of land, cannot permit the mortgaged property to be sold for taxes, and become the purchaser thereof, either directly or indirectly, for the purpose of cutting off a prior lien. If the owner himself buy at the tax sale, or if he acquire the tax title from a stranger who purchased at the sale, it will operate only as a payment of the taxes; but if the purchase at the tax sale is made by some third person in pursuance of a fraudulent arrangement with the owner to cut off a prior lien, such third person thereby acquires a title good against every one except those having equities in the premises, among whom will be prior lien-holders.

2. STATUTE OF LIMITATIONS ON TAX SALES — PURCHASE BY OWNER — FRAUD — CODE, § 2840.— Where an owner in possession of land fraudulently permits it to be sold for taxes in order to cut off a prior lien, and buys in such tax title, either directly or indirectly, the limitation of three years provided by section 2840, Hill's Code, does not apply to actions for the recovery of such property by a prior lien-holder.

3. IDEM — NOTICE — BONA FIDE PURCHASER.— Where an owner in possession of land purposely permits it to be sold for taxes in order to cut off a prior lien, any purchaser other than the owner takes the title subject to the prior lien, and all persons taking from such purchaser with notice will also hold subject to the prior lien; but *bona fide* purchasers from the tax sale purchaser, without notice, take freed from the prior lien.

4. APPEAL — EXCEPTIONS TO INSTRUCTIONS.— An exception to a series of instructions is sufficient to secure their consideration on appeal, where they in effect assert but one propositon of law.

5. GENERAL EXCEPTION TO INSTRUCTIONS.— A general exception to an instruction is sufficient, when it is challenged on the ground that it is not the law as applied to the facts of the case.

6. PRESUMPTION OF HARMLESS ERROR.— When prejudicial error affirmatively appears on the face of the record, the appellate court cannot presume that it was harmless; the matter rendering it harmless should appear in the bill of exceptions.

Multnomah County: E. D. SHATTUCK, Judge.

This action was originally commenced by J. M. Nickum on the fifteenth day of October, 1891, against Walter Danvers and Isabella Danvers to recover the possession of the northeast fractional quarter of section twenty, township one south, of range two east, containing one hundred and fifty-eight acres of land more or less. The complaint was in the usual form. Tiny Gaston filed a petition claiming that Walter Danvers and Isabella Danvers were tenants of hers as to all of said land except thirty acres in a square form in the northeast corner thereof, and she was, by order of the court, made a party defendant, and defended as all of said land except said thirty-acre tract, for which the said Walter Danvers and Isabelle Danvers defended. Walter Danvers and Isabelle Danvers filed a separate answer claiming title to said thirty-acre tract under the said Tiny Gaston, and by adverse possession. The defendant, Tiny Gaston, filed her separate answer denying that plaintiff had any title to said property or any part thereof, and denying his right to the possession of the same or any part thereof, and setting up title to all of said land, excepting said thirty acres in herself.

For the purposes of this appeal it is sufficient to say that on the tenth of April, 1874, one G. W. Brown, who was the owner of the land in controversy, executed and delivered to Susannah Nickum a mortgage thereon to secure the payment of the sum of six hundred dollars and interest, due one year after the date thereof. On the twenty-ninth of the same month Brown sold and conveyed the land to

one Laura Bennett, subject to the Nickum mortgage, and in 1879 it was sold for the taxes of the preceding year to one Lucy Mason, who received and recorded her deed therefor on the eighteenth of July, 1881. On the twenty-second of December, 1882, default having been made, Susannah Nickum commenced a suit to foreclose her mortgage, making Lucy Mason a party thereto, alleging that her purchase of the land at the tax sale was fraudulent and void as to the mortgage. Such proceedings were afterwards had in the foreclosure suit as that on the nineteenth of September, 1884, a decree was entered foreclosing the mortgage as to all the defendants except Lucy Mason, and dismissing the complaint as to her "without prejudice to plaintiff's right to have said Lucy Mason's title to said premises determined in a proper proceeding." On a sale of the premises under the decree of foreclosure Susannah Nickum became the purchaser, receiving her deed on the twenty-first of March, 1885, and she has subsequently conveyed the premises to the plaintiff J. M. Nickum. On the twenty-first of November, 1884, Lucy Mason sold and conveyed the land in controversy to the defendant Tiny Gaston, who gave evidence on the trial tending to show that she was a *bona fide* purchaser for value and without notice of any fraud in the purchase of the land by Lucy Mason, and that she and her grantor had been in the adverse possession of the land from the date of the tax deed to the time of the trial. To avoid the effect of the tax deed the plaintiff gave evidence tending to show that the purchase by Lucy Mason was made in pursuance of a fraudulent arrangement between her and Laura Bennett, who owned and was in possession of the land at the time the assessment was made, by which Laura Bennett was to suffer the land to be sold for taxes in order to cut off the Nickum mortgage, and Lucy Mason was to become the purchaser at such sale and subsequently convey the land to her, and that the defendant Tiny Gaston

purchased of Lucy Mason with knowledge of these facts. The court instructed the jury in effect that if such an arrangement or agreement existed between Laura Bennett and Lucy Mason for the purpose of defeating the Nickum mortgage, the tax sale "did not confer any title upon the purchaser, but simply stands as a payment of the taxes,— it has no further force or effect,"—and "could not be used for any other purpose except to pay the taxes," and that the three years' limitation provided in section 2840, Hill's Code, has no application to this case.

The contention for appellant is that all inquiry into the validity of the tax sale to Lucy Mason is cut off by section 2840, Hill's Code, which provides that "any suit or proceeding for the recovery of lands sold for taxes, except in cases where the taxes have been paid or the land redeemed, as provided by law, shall be commenced within three years from the time of recording the tax deed of sale, and not thereafter," unless the plaintiff can show that the tax for which the land was sold was actually paid before the sale, or that the land was subsequently, and within the time allowed by law, redeemed; or, if this is not so, that the tax deed was at least *prima facie* valid, and will support the title of defendant if she is a *bona fide* purchaser for value, whether the alleged combination between Laura Bennett and Lucy Mason existed or not; and hence it was error, under the issues in this case, for the court to instruct the jury that if they believed such an arrangement did exist, the tax deed was of no effect, and "could not be used for any purpose except to pay the taxes." For the plaintiff the contention is that, as Laura Bennett was the owner and in possession of the property at the time of the assessment, it was her duty, as against the mortgagee, to pay the taxes, and if she entered into an arrangement with Lucy Mason by which she was to suffer the land to be sold for such taxes, and purchased by Lucy Mason, for the purpose of cutting off the lien of the Nickum mort-

gage, the sale operated merely as a payment of the taxes, and Lucy Mason did not acquire, either by her purchase or tax deed, any right or title whatever to the property, which she could convey to the defendant.

Upon the trial the jury returned a verdict in favor of Walter and Isabella Danvers for the thirty-acre tract claimed by them, and in favor of the plaintiff for the remainder of said quarter section of land described in the complaint. Judgment having been entered accordingly, the defendant Tiny Gaston appeals. Reversed.

*P. L. Willis*, and *Seneca Smith*, for Appellant.

*Albert H. Tanner* (*John H. Mitchell & Son* on the brief), for Respondent.

MR. JUSTICE BEAN delivered the opinion of the court:

1. The law is well settled that a mortgagor, or his successor in interest, remaining in possession of the land, cannot permit the mortgaged property to be sold for taxes, and become the purchaser thereof, either directly or through the agency of another, for the purpose of cutting off a prior lien. He is under a legal obligation to pay the taxes, and cannot, by neglecting to perform this duty, and suffering the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased thereat. By such a purchase he does not acquire, as against the lien-holder, any title or right to the property better than he had before, but the sale will operate only as a mode of paying the taxes, leaving the title in the same condition as if no sale had been made. "This principle is universal," says Judge Cooley, "and is so entirely reasonable as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance": Cooley on Taxation, 345; Blackwell on Tax Titles, §§ 566, 591;

*Christy* v. *Fisher,* 58 Cal. 256; *Lewis* v. *Ward,* 99 Ill. 525; *Ralston* v. *Hughes,* 13 Ill. 470; *Edgerton* v. *Schneider,* 26 Wis. 385; *Bassett* v. *Welch,* 22 Wis. 175. When the purchase at such a tax sale is made by the owner directly, or when he afterwards acquires title from a stranger who purchased at the sale, it operates, as to the lien-holder, only as a payment of the taxes, and the owner does not acquire any title to the property as against such lien-holder better or stronger than what he had before the sale. It is, in effect, as if no sale had in fact been made, but as if the owner had discharged his duty by paying the taxes before the sale. But where the purchase is made by, and the deed taken in the name of, some third person, although in pursuance of a fraudulent arrangement between the owner and the purchaser to cut off some prior lien, the sale is not entirely void, but the purchaser obtains a title to the land good against the world, except those who might have equities in respect to it, and who should see fit in a proper mode to assert their equities. There is no resulting trust in favor of the owner, nor can the purchaser be required or compelled to convey the property to him or as he may direct: *Conn. Mutual Life Ins. Co.* v. *Bulte,* 45 Mich. 113 (7 N. W. 107); *Maxfield* v. *Willey,* 46 Mich. 252 (9 N. W. 271). By his participation in the fraud, he has put it out of his power to ask the interposition of a court in his behalf, and the purchaser may withhold the title from him. Between the owner and the purchaser the sale is valid, and passes the title; but the lien-holder whose right is sought to be cut off by such a sale and purchase may insist that as to him the sale shall be treated as inoperative to affect his lien, and the purchaser should be deemed to have acquired the title to the property subject to such lien.

2. It would necessarily follow, then, that where the land is bought at the tax sale by one in possession and under obligation to pay the taxes, or is by such an one

bought from a stranger who purchased at the tax sale, the statutory period in which a "suit or proceeding" can be maintained for the recovery of land sold for taxes would not bar the right of the lien-holder to enforce his lien, and this is the construction given to a similar statute by the supreme court of Wisconsin. In *Jones* v. *Davis*, 24 Wis. 229, which was a proceeding to enforce a judgment lien, the defendant claimed title under a tax deed which had been recorded for a time exceeding the statutory period in which an action could be maintained for the recovery of land sold for taxes, and contended that the proceeding was barred, but it was held that the lien of the judgment was not cut off or destroyed by the tax deed, the court by COLE, J., saying: "The answer shows that the tax title was obtained by the grantors of the defendant, who were in possession, and under obligation to pay the taxes. A person in possession of land, and whose duty it is to pay the taxes at the time of the assessment, cannot permit his own property to be sold for taxes, and then obtain a tax deed for the purpose of cutting off a prior lien. This point has been so decided in the cases of *Smith* v. *Lewis*, 20 Wis. 369; *Bassett* v. *Welch*, 22 Wis. 175." And to the same effect is *McMahon* v. *McGraw*, 26 Wis. 614. In dealing with the respective rights of the lien-holder and a third party who purchased under an agreement with the owner, the transaction must be treated as if no sale had been made. The lien-holder's rights, because of the fraud, are unaffected by the sale, and the purchaser takes the property subject to the lien. It would seem clear therefore, that the right of a lien-holder to enforce his lien against such a purchaser, or one claiming under him with notice, is not barred by the statute. A contrary doctrine would enable a party to profit by his own fraud, and this the law does not suffer or allow. The rule as announced by the court in the instruction excepted to we think, therefore, correctly stated the law as applicable to a controversy between the lien-holder

and the purchaser at a tax sale, under the circumstances stated in the instruction, or to one claiming under him with notice.

3. But when it is remembered that the defendant claims, and gave evidence tending to prove, that in purchasing this tax title from Lucy Mason she was a *bona fide* purchaser for value, and without any notice, knowledge, or intimation of any fraudulent or other arrangement between Laura Bennett and Lucy Mason with reference to the sale, it will be observed that the effect of the instruction that if such combination existed the tax deed under which Lucy Mason held the only title she attempted to convey "is of no avail except to pay the taxes," and "could not be used for any other puspose," would be to defeat the title of the defendant, even if she was a *bona fide* purchaser for value, and in this view was erroneous, as applied to the facts of this case.   In *Van Shaack* v. *Robbins*, 36 Iowa, 201, which was a proceeding to set aside a tax sale and title, it was conceded that there was a fraud on the part of the original purchaser at the tax sale, but the tax title was held valid in the hands of a *bona fide* purchaser, notwithstanding the statute provided that if fraud in the purchaser at a tax sale is established, "such sale and title shall be void," the court through COLE, J., saying:   "The manifest and unmistakable purpose and intent of the entire revenue act is to give value to and confidence in tax titles.   This value and confidence would be destroyed and the intent defeated by a holding which would render any tax title in the hands of an innocent purchaser wholly worthlesss and void, upon the showing of a fact which might not be in his power to ascertain in advance of his purchase.   The owner of the land sold for taxes has it in his power, under the rule indicated, by diligence to avoid the sale for fraud at any time within three years, and even after that if the title is made to and held by the purchaser; while under a contrary rule a purchaser would

be entirely unable to protect himself in any case.   The only sure protection a man could have under such rule would be to refuse to make any purchase of a tax title; and if all should thus act the entire purpose of the statute would be defeated.   In our opinion, then, the statute is to be construed the same as if it read, 'such sale and title shall be avoided.'"   So in this case, if the owner of the land neglected to pay the taxes, it was not only the privilege, but the duty, of the mortgagee to do so before this sale, or to redeem the property within the time allowed by law therefor.   She could have paid the taxes or redeemed the land, and added the amount thereof to her lien, (section 2838, Hill's Code,) and thus prevented or defeated the sale without any injury to herself.   Because she neglected to do either she was in default, and the sheriff, in consequence thereof, was required to make a deed to the purchaser; and if the defendant bought the land from the holder of the tax deed in good faith, and without notice of fraud, the mortgagee must suffer the loss "which she could have prevented by the performance of her duty or by proper diligence."

The judgment of the court below must therefore be REVERSED and a new trial ordered.

ON REHEARING.

[S. C. 35 Pac. 31.]

MR. JUSTICE BEAN delivered the opinion of the court:

In order that the questions presented on this rehearing may be fully understood, it is necessary to set out more at length than was done in the former opinion the facts in this case.   The record recites that "After some instructions had been given by the court, Mr. Tanner, attorney for the plaintiff, addressing the court, said, 'I think there is one matter your honor has not instructed the jury upon, and that is the question about the arrange-

ment between Laura Bennett and Lucy Mason about the payment of the mortgage.' Whereupon the court instructed the jury as follows, to wit: 'When fraud is charged, it ought to be clearly made out. It is charged here [that] there was a fraudulent combination between Lucy Mason, by her agent and father, O. P. Mason, and Laura Bennett and J. A. Bennett, to have this land sold for taxes in order. to escape the claims of Susannah Nickum under her mortgage. The effect which any such combination would have might be very easily defeated, or it might be made of very. little avail, by the mortgagee paying the taxes herself. Our law provides that the mortgagee may pay any taxes levied upon the land upon which he holds a mortgage, himself, if the mortgagor neglects it, and then may tack the amount so paid as taxes to his debt, and have it refunded to him when the mortgage is paid off. But nevertheless it is held that when parties occupying such relation as vendor and purchaser, mortgagor and mortgagee, when parties occupying that position conspire together to have the land which is mortgaged, and upon which the mortgagor ought to pay the taxes, sold for taxes, and the mortgagor, or some person engaged in the conspiracy, bid it in, such a sale amounts to nothing so far as conferring any title upon the purchaser, but simply stands as payment of the taxes; it has no further effect. Question is made here whether such combination existed or not in this case, and this question I submit to you to find. If you find that there was such combination, agreement, or arrangement for the purpose of defeating this mortgage, if they could, then the tax sale is of no avail, except to pay the taxes which had been levied.' Mr. Tanner then, again addressing the court, said: 'I suppose if the jury should find that this scheme was entered into, and that buying in could only act as payment of the taxes, that then this three years' limitation would not apply.' Whereupon the court then further instructed the jury as follows, to wit: 'I don't

see any application at all.   It could not be used for any other purpose except to pay the taxes.'   To each of these instructions, defendant Tiny Gaston, by her counsel, then and there duly excepted, and the exceptions were allowed by the court." From the foregoing it appears that the effect of the instructions of the court was that if the fraudulent combination between Lucy Mason and Laura Bennett, referred to, in fact existed, the tax sale amounted to nothing, so far as conferring any title upon the purchaser, but simply stood as a payment of the tax, and could have no further force or effect, and this we have held to be error as applied to the facts of this case.

The respondent insists, upon the rehearing, that the exceptions do not present for consideration in this court the question as to the effect of the tax sale, because (1) it does not point out particularly the portion of the charge excepted to, nor does it state the grounds of the objection and exception; (2) the instructions are at most only defective in form, or deficient in fullness, and the attention of the court should have been particularly called to such defect, so that it might have corrected the error into which it had fallen; and, (3) that, inasmuch as the entire charge is not in the record, we must assume that the court in some other portion of it gave the law correctly as to the rights of a *bona fide* purchaser under the tax deed; and now of these objections in their order.

4.   We agree with counsel for respondent that an exception to a charge of the court must point out distinctly the particular portion excepted to, and that a general exception to the entire charge, or to a series of propositions, if any one of them is correct, is insufficient.   In this case, however, the exceptions show distintly that appellant excepted to particular portions of the charge, which, in their entirety, we have held erroneous as applicable to the facts of this case.   The instructions excepted to, if they may be considered as a series of instructions, amount in

effect to asserting but one proposition of law, namely, that if the jury should find, from the evidence, that a fraudulent combination between Mason and Bennett for the sale and purchase of the property in controversy for delinquent taxes existed, that such purchase, and the sheriff's deed acquired in accordance therewith, conveyed no title whatever. This being the case, we think the exceptions are clearly sufficient.

5. It is also contended that the exceptions are insufficient because they do not state the grounds of the objection. But when an instruction is challenged on the ground that it is not the law as applied to the facts of the case, we understand a general exception is sufficient. We know no rule of law requiring counsel in such case to embody in his objection an argument or the reason for his contention. It is sufficient to notify the court that he challenges the correctness of the law as stated by it in its instructions. When the charge, without asserting an erroneous proposition of law as applied to the case, is ambiguous, or is deficient in fullness, or does not go far enough, or is not sufficiently explicit, the party excepting should call the attention of the court to the particular grounds upon which he objects, so it may be corrected: *Kearney* v. *Snodgrass*, 12 Or. 317 (7 Pac. Rep. 309). But when an erroneous proposition of law is asserted, as applied to the case on trial, it is sufficient to except generally, because in such a case the supposition is that the question has been previously fully argued and presented, and the court's opinion formed, and that it would not be modified or changed by again calling its attention to the particular reasons or grounds upon which counsel contends the instruction to be erroneous. In the case at bar the court asserted what we conceive to be an erroneous proposition of law, as between the parties to the record, and under the issues in the case, hence the rule invoked does not apply.

6. Again, it is urged that, inasmuch as the entire

charge is not in the record, we must assume that the court did particularly instruct the jury as to the rights of the defendant as a *bona fide* purchaser, but there are two sufficient reasons why this position is not well taken.  In the first place, it does affirmatively appear from the record that the portion of the charge excepted to is all the court said upon the effect of the alleged fraudulent combination; and, second, that the attempted application of the well-known rule invoked by counsel in this case, that error will never be presumed, but must affirmatively appear, is answered by STRAHAN, C. J., in *DuBois* v. *Perkins*, 21 Or. 190 ( 27 Pac. Rep. 1044), in this language:  " While it is true that error will never be presumed, the converse of the proposition is equally true.  When error does affirmatively appear, it will not be presumed that it was rendered harmless, or removed.  If it were so, the respondent must see to it that the matter which renders it harmless, or removes it, is made to affirmatively appear in the bill of exceptions."  When error affirmatively appears upon the face of the record, which is prejudicial, as it does in this case, we cannot assume that it was harmless.

In consequence of these views, the former judgment is adhered to.  REVERSED.