Argued at Pendleton October 26; reversed December 1, 1936

# NELSON *v.* McALLISTER DISTRICT IMPROVEMENT CO., ET AL.

(62 P. (2d) 950)

96

Department 2.

*George H. Brewster,* of Redmond (Cunning & Brewster, of Redmond, on the brief), for appellant.

*H. H. DeArmond,* of Bend (Upton & DeArmond, of Bend, on the brief), for respondents.

RAND, J. Plaintiff is the holder in due course of four bonds made payable to bearer for $1,000 each, which were issued on August 1, 1918, by the McAllister District Improvement Company, a corporation organized and existing under and pursuant to chapter 172, Laws 1911, as amended by chapter 101, Laws 1917. The title to this act reads as follows:

"To enable landowners to incorporate themselves for the purpose of irrigation or drainage, defining their corporate powers, regulating the manner of issuing bonds, making the debts of said corporation a lien on the land of said owners and fixing the organization and annual license fees of such corporation."

Under this act, any three or more owners of land desiring to improve their lands by irrigation or drainage may form a district improvement corporation for the irrigation or drainage of such lands and subject the same to a common lien for all the debts of the corporation incurred in the accomplishment of such purpose. The corporation so formed is expressly authorized to

issue and sell bonds and the holder or holders of such bonds, like all other creditors of the corporation, are given a lien upon all the lands included in the district for the amount due thereon. This lien, under the express terms of the statute, is not personal but runs with the land and every person subsequently acquiring title to any part of said lands, under the express provisions of the act, takes the same subject to such lien.

In order to form such a corporation and to include his lands within the district, which is wholly voluntary upon the part of every landowner, the statute provides that every owner of the lands to be included within the district shall be one of the incorporators and that he shall make, subscribe and acknowledge articles of incorporation in triplicate, stating his name and a description of the lands by legal subdivisions as near as possible, and the total number of acres to be included within the district, and that one copy of such articles shall be filed in the office of the secretary of state, one copy in the office of the county clerk of the county where the lands are situated, and the other copy retained by the corporation. The statute further provides that:

"If at any time after the filing of said articles of incorporation, or any amendment thereof, the owners of all the land described in said articles of incorporation, or amendment thereto, shall desire to subject said land to the indebtedness incurred by said corporation, the owners of all such land described in the articles of incorporation, or amendment thereto, shall make, subscribe and acknowledge before some person authorized to take acknowledgment of deeds, a notice to whom it may concern, which notice shall contain a description of the land with the same particularity as is provided for in the articles of incorporation, that the land described in said articles of incorporation, or any amendment thereto, and described in the said notice, will be improved by irrigation or drainage or both, by said cor-

poration, under the provisions of this Act, and that said land shall be subject to any indebtedness incurred by said corporation. Said notice shall be recorded in the office where deeds and other instruments affecting the title to real property are recorded, of the county or counties where the land is situated. From and after the recording of said notice all the debts and obligations of said corporation theretofore or thereafter created shall be a lien upon the land described in said notice prior to every lien attaching to said land subsequent to the date of the recording of said notice, except State, county and school taxes, whether such debt or obligation of said corporation be in existence at the time of the latter lien attaching or be created afterward, and such lien shall not be personal, but shall be an obligation upon the land and shall run with the land.''

The act further provides:

''Every owner of land described in said articles of incorporation is a member of said corporation, and said membership is lost or gained through the respective sale or purchase of any of said land as the case may be.''

It will thus be seen that, under the express provisions of this act and upon a compliance with its terms, every person who made and subscribed to the articles of incorporation and the notice and every person who subsequently acquires title to said land are, by virtue of their ownership and by force of the statute, members of the corporation and entitled to share in common with all other owners of land situated within the district all the privileges of such membership and hold their land subject to the lien of every creditor of the corporation for all its debts and obligations then due and owing to such creditor, and that such lien or liens are prior to any lien subsequently attaching to any particular tract of land within the district except liens for state, county and school taxes.

Before referring more particularly to the questions involved here, it should be borne in mind that corporations organized under this act are not to be confused with irrigation districts which are organized and exist in this state under a different law. The distinction between the two was pointed out by Mr. Justice BEAN in *Rathfon v. Payette-Oregon Slope Irr. Dist.*, 76 Or. 606 (149 P. 1044), and need not again be repeated other than to say that the inclusion of land within a district organized under this act can result only from the affirmative voluntary act of its owner and not by the coercion of a majority vote as may happen in the case of an irrigation district, which distinction is of importance upon the question of estoppel of landowners under this act.

The facts here are as follows: The McAllister District Improvement Company was organized prior to August 1, 1918, by some seven landowners whose lands required irrigation and, upon the trial of this cause, it was stipulated that each of said then landowners joined in the incorporation of the McAllister District Improvement Company and in the execution of a notice to all whom it may concern that their lands, which were particularly described in said articles of incorporation and in said notice, should thereafter be subject to a lien for the debts and obligations of said corporation.

Without referring more particularly to said stipulation, it is only necessary to say that it was stipulated that all the requirements of the statute, in so far as the formation of the corporation and the execution and recording of said notice are concerned, were strictly complied with, and the lands of the answering defendants herein are those which were specified in the articles of incorporation and in the notice above referred to.

It was also stipulated that, after the formation of said corporation and the recording of said notice and on or just prior to August 1, 1918, the corporation borrowed from F. G. Atkinson the sum of $3,600 and applied the same in the construction of a corporate irrigation system for the irrigation of said lands and, under an agreement with him, issued and sold to him the four bonds above referred to in consideration of said sum of $3,600 on that day paid by him to the corporation. It was further stipulated that Atkinson later and before maturity of said bonds transferred and delivered them to the plaintiff and that plaintiff purchased them for value and without notice of any infirmity in said bonds and is a holder in due course; that there is now due and owing on said bonds the sum of $4,000 with interest thereon from November 1, 1932, at the rate of 6 per cent per annum, less the sum of $105 paid on May 1, 1933.

So far as the record discloses, no other bonds were ever issued by the corporation and there are no other outstanding debts or obligations owing by the corporation.

To enforce his lien, plaintiff brought this suit, praying that the amount due under the bonds be adjudged and decreed to be a lien upon all the lands within the district. He joined as defendants in the suit all persons owning lands within the district and all persons having or claiming to have some right, title or interest in such lands, and alleged in the complaint that plaintiff's lien was prior to all other liens upon any particular tract of land within the district. The cause was tried upon an agreed statement of facts. Most of the defendants were in default for want of an answer. Certain of them answered, setting up that the bonds were invalid because of the failure of the district to comply with a cer-

tain other provision of the statute to which we have not yet referred. The cause was tried on the facts stipulated and a decree was entered awarding a judgment in favor of the plaintiff and against the defendant McAllister District Improvement Company for the amount due on the bonds, and dismissing the suit as to the remainder of the defendants. From this decree, the plaintiff has appealed.

One of the facts stipulated and which was claimed as a defense by all the answering defendants was that prior to the borrowing of the money and the issuance of the bonds, the corporation had failed to employ a competent engineer to investigate and prepare plans and estimates and submit them with his report to the landowners, which failure, it is contended, invalidates the bonds. The particular provisions of this statute relied upon by the defendants are as follows:

"* * * After the making and recording of said notice by all owners of land described in said articles of incorporation, or any amendment thereof, as provided in Section 9 thereof, said members at any meeting of said corporation may adopt a resolution designating and authorizing the expenditure of a certain amount of money for preliminary investigation and report upon the plans and cost of construction of the irrigation or drainage system as the case may be. The directors shall then secure a competent engineer who shall make such investigation, and draw detailed plans and specifications and make a report upon the same, including an estimate of the probable cost of construction. Such plans and specifications and report shall be submitted to a meeting of the members of said corporation for adoption. Such adoption must be made by resolution passed by a two-thirds vote of all the votes to which the members may be entitled. If said plans, specifications and report are adopted, said meeting shall then pass a resolution authorizing the issue of bonds in a certain sum. Said sum designated shall not be less than one hundred twenty per centum of the estimated cost of

construction as shown by said adopted report. A certified copy of said resolution shall be recorded in the office of the county or counties in which the land is situated, where deeds to real property are recorded. Being so authorized, the board of directors may issue and sell bonds of the corporation at such times and in such amounts as may be necessary not exceeding the total authorized amount. Said bonds shall be in denominations of Five Hundred Dollars and One Thousand Dollars. They shall bear interest from date of issue at not more than six per centum per annum, payable semi-annually on the first day of May and November of each year, and shall run for such time or times as the corporation may fix and determine, not to exceed fifty years, and said corporation may provide that bonds or any of them may be retired at the option of the corporation on any interest paying date after the expiration of ten years. Said bonds shall not be sold for less than ninety per centum of their face value.''

While it is true that the stipulation shows that no engineer was employed, it was stipulated that, before the issuance of these bonds, a resolution was passed and adopted, not by a two-thirds vote as provided in the statute, but by the unanimous vote of every person who then owned any of the lands within the district and that this resolution was recorded in the office of the county clerk of Deschutes county where said lands are situated. Moreover, these bonds are payable to bearer and are negotiable instruments and plaintiff is a holder in due course, all of which facts are admitted either by the pleadings or by the stipulation. A copy of the bonds was attached to the complaint as an exhibit in the case and it was admitted by all the answering defendants in their answers that the copy attached to the complaint was a true and correct copy of the bonds in question. Each of these bonds contains the following recital:

''This bond is one of a series of four One Thousand Dollar bonds of like date, issued for the purpose of

paying the cost of making certain improvements and enlargements in said McAllister Ditch, and under and by authority of, and in full compliance with the provisions of the constitution and laws of the State of Oregon, and by authority of the vote of more than two-thirds of the owners of property within the McAllister District Improvement Company, and of the vote of more than two-thirds of the members of said McAllister District Improvement Company, and in pursuance of the orders duly made and entered by resolution at a meeting of the members of the said McAllister District Improvement Company held July 23, 1918, and it is hereby declared that provision has been made in accordance with law by said McAllister District Improvement Company for the levy and collection of assessment sufficient to pay the interest upon this bond as the same matures in accordance with the laws of the State of Oregon, and that all of the acts and conditions and things required to be done, and that all things required by law to be done for the issuing of this bond, has been performed in regular and proper form pursuant to chapter 172 of the Laws of the State of Oregon, for 1911, and chapter 101 of the Laws of the State of Oregon for 1917.''

■ It is manifest from the language of that part of the act last quoted that the directions contained in the act as to the employment of an engineer and the acts to be performed by him preliminary to the issuance of the bonds were intended as a protection to the landowners, and that if all such landowners decided to waive such protection and save the expense of employing an engineer they ought to be permitted to do so without invalidating the bonds. The situation presented here would be different if there had been a single landowner who objected to the adoption of the resolution or failed to vote for its adoption, but, since it is stipulated that the adoption of the resolution was passed by the unanimous vote of every landowner and a copy thereof was

duly recorded in the office of the county clerk, there can be no valid reason for holding that the bonds, because of such failure, are invalid.

■ It was also stipulated that Atkinson, when he paid the money to the corporation and received the bonds, had no knowledge of any irregularity and took them in entire good faith. Under these circumstances, we think that all the parties present at that meeting and all persons in privity with them are estopped to assert this defense.

■■ Again, as stated, the plaintiff is the holder in due course of bonds negotiable in form which, on their face, recite that every provision of the statute upon which their validity depended had been complied with before the bonds themselves were issued. Furthermore, if the bonds were invalid because of said irregularity, it would not affect plaintiff's lien only to the extent of the difference between the $3,600 paid by Atkinson and the face value of the bonds, since, under the express provisions of the statute, whether bonds are issued or not, any indebtedness of the corporation confers the right to a lien. For this reason, we think it was error for the court to hold that, because of such alleged irregularity, the bonds were invalid, and that plaintiff had no lien upon any of the lands within the district for the moneys borrowed by the corporation and expended in the improvement and enlargement of its irrigation system.

■■ In the Rathfon case, *supra,* it was held that a district improvement company is a quasi-public corporation. The act itself expressly provides that the persons appointed in its articles of incorporation as directors and their successors in office, associates and assigns, by the name assumed in such articles, shall thereafter be deemed a body corporate with power, among other things, to sue and be sued, contract and be

contracted with, have and use a corporate seal, purchase real and personal property, exercise the powers of eminent domain, appoint subordinate officers, establish rules and regulations, charge and collect rates and tolls, and levy and collect assessments. A corporation so organized and possessing such powers is at least a quasi-municipal corporation and, since the act expressly grants to such corporation the power to issue bonds, the rules applicable to the negotiability of municipal bonds would apply. One of such rules is that the power to issue bonds implies the power to make them negotiable and, being negotiable, they are generally subject to the uniform negotiable instrument law. In the hands of a holder in due course, who purchased them before maturity for value and without notice, they are not subject to the defense sought to be imposed here. Moreover, the recitals contained in these bonds are representations as to matters of fact as distinguished from those of law and relate to the performance or existence of conditions precedent and were made by persons who were charged by law with the determination of those facts before being authorized to issue the bonds. These facts bring them within the rules stated in *Klamath Falls v. Sachs,* 35 Or. 325 (57 P. 329, 76 Am. St. Rep. 501), where the court said:

"'In legal effect, adequate recitals contained in negotiable municipal bonds are equivalent to a representation, or warranty, or certificate on the part of the officers, that every thing necessary by law to be done has been done, and every fact necessary by law to have existed did exist, to make them legal and binding."

This also affords another ground for holding that these bonds, in the hands of a holder in due course, are free from any defect of title of prior parties and from defenses which would be available to prior parties

among themselves, as provided by section 57-407 of our Code.

■ Again, it is obvious that not only the McAllister District Improvement Company but also the answering defendants in this suit are and should of right be estopped to deny the validity of these bonds. This estoppel arises from the admitted fact that, before the issuance of these bonds, all owners of land within the district voted unanimously in favor of the adoption of a resolution authorizing the officers of the corporation to issue and sell these bonds to Atkinson, and, since all the answering defendants hold title to their lands by mesne conveyances from those particular persons, they are in privity with them and, because of such privity, are likewise estopped.

■ One of the answering defendants, the Oregon State Land Board, sets up as a defense that long after the issuance and sale of these bonds it loaned various sums of money belonging to the irreducible school fund to the then owners of four parcels of land within the district and accepted, as security for said loans, mortgages on the land; that all said mortgages being in default, it was compelled to and did foreclose some of said mortgages and became the purchaser thereof at the foreclosure sale, and, as to the other of said mortgages, it was compelled to accept deeds from the owners thereof, and that it is now owner of said parcels of land. It contends that it holds title to these parcels of land freed from plaintiff's lien.

This contention can not be maintained. The agents of the State Land Board loaned these moneys with constructive notice of whatever the public records of Deschutes county disclosed in respect to the title of said mortgaged lands and, hence, its title is subject to plaintiff's lien. The transactions referred to are within the

108

rule announced in *State Land Board v. Davidson*, 147 Or. 504 (34 P. (2d) 608), where it was held that bonds and other obligations of an irrigation district, prior in time to a mortgage of the State Land Board, have priority over a later mortgage given to the State Land Board.

C. E. Livesay, one of the answering defendants, alleges as a defense that, since the bonds were issued, he has acquired title to a tract of land within the district by virtue of a sale of the property for state, county and school taxes. This, he contends, discharges his land from the lien of the bonds.

■ If this contention can be maintained, then the statute affords no security to a bondholder since, by the simple device of not paying the taxes assessed against the lands within the district, the landowners, by having their lands sold for taxes and bid in by some person acting in their behalf, can extinguish all liens. We think that the statute is not capable of that construction. It merely provides that the lien of a corporation creditor which attaches to all the lands within the district is subject to the lien attaching to any particular tract of land for state, county and school taxes. It does not provide nor is there any language contained in the act indicating an intention that the lien of a corporate creditor will be extinguished by the creation or existence of a tax lien or by the sale of the property for taxes. Under section 69-722, Oregon Code 1930, the taxes assessed upon real property become a lien thereon from and including the first day of March in the year in which they are levied until paid and, since taxes are not always paid promptly, it is only fair to assume that tax liens may frequently exist against the lands within the district without in any way impairing the lien of a corporate creditor other than, for the time being, to subject the latter to the

priority of the tax lien which, when paid, will cease to be a lien upon the land.

■ But it is argued that, regardless of the provisions of this statute, a tax sale of lands within the district vests title in the purchaser free from all equities and incumbrances existing prior to the sale upon the title of the previous owner, as is the rule in ordinary cases. In order to give that effect to this statute, it would be necessary to ignore and absolutely disregard the provision contained in the act that every owner of land described in the articles of incorporation is a member of said corporation and ''said membership is lost or gained through the respective sale or purchase of any of said land as the case may be''. Under this provision, when Livesay acquired title to his land, he became a member of the corporation the same as if the delinquent tax had been paid by the former· owner of the land and the land had then been conveyed to Livesay. He thereby became entitled to all the privileges of such membership and to use, for the irrigation of his land, the water appurtenant thereto. That such was the intention of the act is obvious from the fact that all waters used for irrigation purposes on the land are appurtenant to the land and belong to the water users and not to the corporation. A conveyance, therefore, of a particular tract of land within the district, whether voluntarily or involuntarily made, by force of the statute itself, vests in the purchaser not only the title to the land but also the right to use the water appurtenant thereto and to have the same delivered to him by the corporation.

Moreover, this statute expressly provides that the lien of a corporate creditor shall attach to all the lands within the district and shall run with the land which would not be the case if a tax sale of lands within the district would extinguish the lien upon the land sold.

■ It was also contended that plaintiff's sole remedy is by writ of mandamus to compel the officers of the district to levy assessments for the payment of these bonds. If this were an ordinary municipal corporation, the contention would have to be sustained for, in that case, the property of the corporation would not be subject to levy and sale under execution and the creditor of such corporation would have no lien on lands privately owned within the municipality. For those reasons alone, the creditor would have no remedy other than by mandamus to compel the proper officers to levy a tax for the payment of his claim. In the instant case those reasons do not apply with the single exception that the McAllister District Improvement Company owns no property subject to levy and sale under execution and, hence, the reason for the application of the rule requiring mandamus proceedings to be brought by a creditor of a municipal corporation does not exist in this case.

Again, this statute now under consideration is *sui generis* in that, unlike all other municipal or quasi-municipal corporations, it expressly grants to every creditor of the corporation a lien upon all the lands privately owned within the district for the indebtedness due such creditor.

Section 6-501 of the Code provides that:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit."

Section 8-302 of the Code, which authorizes the issuance of a writ of mandamus, expressly provides that:

"* * * The writ shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law."

██ And, since, under section 6-501, the plaintiff has a plain, speedy and adequate remedy in the ordinary course of the law by a suit to foreclose his lien as authorized by section 6-501, the issuance of a writ of mandamus is expressly forbidden by section 8-302.

The argument advanced in support of said contention that no case can be found wherein a creditor of a municipal or quasi-municipal corporation has been permitted to foreclose a lien for a debt owing by such municipality fails when it is remembered that no statute, other than the one now being considered, ever granted a lien to such creditor or gave to such creditor a lien upon all lands privately owned within the municipality or district. However, the case of *Williams v. Allen*, 32 N. J. Eq. 485, is a somewhat analogous case wherein a lien for unpaid assessments of a drainage district was foreclosed upon the lands of the delinquent landowners under circumstances similar in many respects to those involved here.

Under the decree appealed from, the trial court gave plaintiff, as his sole remedy, a judgment against the McAllister District Improvement Company which, if it could be enforced at all, could only be enforced against some property belonging to the district. This resulted in depriving plaintiff of any remedy. The McAllister District Improvement Company is not a corporation organized for profit. Its functions are those of a mutual water service company which furnishes water to the owners of lands within the district without profit to the corporation. As such, it has no property subject to levy and sale under execution: *Eldredge v. Mill Ditch Co.*, 90 Or. 590 (177 P. 939); *In re Waters of Walla Walla River,* 141 Or. 492 (16 P. (2d) 939); and *State v. Blake* (Utah), 20 P. (2d) 871. Also see, 2 Wiel on Water Rights (3d Ed.), p. 1252.

We can find no ground upon which the decree appealed from can be sustained. The decree will, therefore, be reversed and the cause will be remanded to the court below with directions to enter a decree in accordance with what is here said.

BEAN and BELT, JJ., concur.

BAILEY, J., dissents.

---

BAILEY, J. (dissenting in part). C. E. Livesay acquired title from Deschutes county, Oregon, to the north half of the southeast quarter of section 36, township 15 south of range 10 east of the Willamette meridian, on April 30, 1932. During that same month and prior to the sale to the defendant Livesay, Deschutes county had, through foreclosure proceedings for collection of delinquent state, county, and school taxes, acquired title to the property above described. No question is raised as to the legality of the assessment of taxes upon this land for state, county, and school purposes, or the validity of the foreclosure proceedings and subsequent sale of the property for delinquent taxes.

Section 5, chapter 172, Laws 1911, provides for the recording of a notice by the owners of land in an improvement district created pursuant to that act, to the effect that the lands described in the notice are to be improved by irrigation or drainage, and that from the time of the recording of such notice "all the debts and obligations of said corporation [the district improvement company] theretofore or thereafter created shall be a lien upon all the land described in said notice prior to every lien attaching to said land subsequent to the date of recording said notice, *except state, county and school taxes*" [italics supplied]. It is the defend-

ant Livesay's contention that when the county foreclosed its lien for delinquent taxes and purchased the property, the said land was freed from all liens for the debts and obligations of the McAllister District Improvement Company existing prior to the date of such foreclosure proceedings.

The McAllister District Improvement Company was organized prior to July 10, 1918. On that date the company filed with the county clerk of the county in which the land was situated the notice above mentioned. The bonds on which this suit is based are dated August 1, 1918.

The law providing for the creation of improvement districts such as the one here involved was enacted in 1911 by chapter 172 of the laws of that year, and amended by chapter 101, Laws 1917. By § 28 of chapter 267, Laws 1907 (later codified as § 3684 L. O. L.), all taxes thereafter lawfully to be imposed, charged or levied upon real property were declared to be a lien upon such real property from and including the day on which the warrant authorizing the collection of taxes was issued, and it was therein further provided that "such liens shall have priority to and shall be fully paid and satisfied before any and every judgment, mortgage or other lien or claim whatsoever, except the lien for a tax for a subsequent year". In 1917 § 3684, *supra*, was amended to provide that all taxes thereafter lawfully imposed "shall be and they are hereby declared to be a lien upon real property from and including" the first day of March of the year in which they were levied until the same should be paid. The 1917 amendment reincorporated the provision above noted as to the priority of the lien of such taxes. The priority of the lien of taxes imposed for state, county, school and other governmental purposes has not been materially changed since

the passage of the two enactments above noted: chapter 305, § 9, Oregon Laws 1935.

When the law was enacted providing for the creation of improvement districts such as the McAllister district, the state law relating to state, county and school taxes distinctly and unequivocally provided that the lien of such taxes should have priority over every judgment, mortgage or other lien or claim, and in making the debts and obligations of these districts a lien upon the property within each district the legislature was careful to require that such liens be given priority over every other lien attaching to the land subsequent to the date of the recording of the notice, except the lien of state, county and school taxes. When the plaintiff purchased the bonds here involved he was charged with knowledge of the law.

In *Keene v. City of Seattle,* 31 Wash. 202 (71 P. 769), which involved the priority of state taxes over city assessments, the court called attention to a former decision in the same jurisdiction, *McMillan v. City of Tacoma,* 26 Wash. 358 (67 P. 68), wherein it was held that the holder of general tax delinquency certificates was not required to pay delinquent street assessments which were a lien upon the real estate, before being entitled to such certificates of delinquency. The court further said:

"It is unnecessary to repeat here the argument used in that case. The statutes were there discussed, showing that it has been the evident policy of the legislature of this state to make the lien for general taxes paramount over every other claim or burden that can attach to lands, and that in the nature of things such a course is not only wise, but necessary. We said in that opinion: 'This policy of the legislature is not only wise, but, in the nature of things, is necessary, in order that the existence and continuation of government may not be

imperiled. The state and its subordinate municipalities can not exist without the collection of public revenue, and serious confusion would result if the lien of taxes levied for that purpose should be made inferior to, or equal with, local assessments or other liens.' "

See also, in this connection: *Osterberg v. Union Trust Co.,* 93 U. S. 424 (23 L. Ed. 964) ; *California Loan & Trust Co. v. Weis,* 118 Cal. 489 (50 P. 697), and the annotation to *Advance Thresher Company v. Beck,* Ann. Cas. 1913B, 517, at 520.

The title which a purchaser at a tax sale acquires is thus described in 26 R. C. L. 401, § 360:

"It is held in most jurisdictions that the title conveyed by a sale for nonpayment of taxes is not merely the title of the person who had been assessed for the taxes and had neglected to pay them, but a new and paramount title to the land in fee simple absolute created by an independent grant from the sovereign and free from all equities and incumbrances existing prior to the sale upon the title of the previous owner. Under this view the sale extinguishes all prior incumbrances on the land or interests in it, though held by persons who were not liable for the tax or in default for not paying it, such as the lien of pre-existing mortgages and judgments, landlords' liens, and inchoate rights of dower."

And in Black on Tax Titles (2d Ed.) 528 § 420, we find this:

"In a considerable number of the states, the revenue laws are so framed that a valid tax sale, and the maturing of the title in the purchaser, will create in him a new and original title, going back no further than the tax sale, and not incumbered with any previous liens or collateral interests. It is the theory of these statutes, and of most of the decisions interpreting them, that the land itself is taxed, not the title; and consequently when the land is sold, the land is transferred to the tax purchaser, dissevered, as it were, from any previous owner-

ship or claim of interest.  *  *  *  And it is held in these states, and very correctly, where the tax is made a paramount lien, that the title thus created is new and independent, its validity being tested by nothing outside of the tax proceedings.''

Under the Bancroft Bonding act (§§ 56-2001 to 56-2010, inclusive, Oregon Code 1930), relating to street and sewer assessments, it is provided (see § 56-2003, *supra*) that all unpaid assessments and interest thereon shall be and remain a lien on each lot assessed, and that "such lien shall have priority over all other liens and incumbrances whatsoever''. This court, however, in *Hughey v. Cornell,* 137 Or. 589 (3 P. (2d) 781), after referring to a statute which provided that all purchasers, except the county, buying property through tax foreclosure sale acquired the property subject to all unpaid city assessment liens, remarked: "In the absence of such statutory provision, it is clear that the purchaser in the tax sale would take the property free and clear of any outstanding liens of a municipality.''

In the majority opinion herein, in discussing the contention that a purchaser at a tax foreclosure sale acquired title to the tract of land within the district free of the lien of the bonds, it is observed that if that contention be true, "then the statute affords no security to a bondholder, since, by the simple device of not paying the taxes assessed against the lands within the district, the landowners, by having their lands sold for taxes and bid in by some person acting in their behalf, can extinguish all liens''. It is a well-known principle of law that what can not be done directly can not be done indirectly. In *Nickum v. Gaston,* 24 Or. 380, 384 (33 P. 671, 35 P. 31), the same contention was answered by this court with relation to mortgaged property and the

duties and obligations of the mortgagor, in the following language:

"He [the mortgagor] is under a legal obligation to pay the taxes, and can not, by neglecting to perform this duty, and suffering the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased thereat. By such purchase he does not acquire, as against the lienholder, any title or right to the property better than he had before, but the sale will operate only as a mode of paying the taxes, leaving the title in the same condition as if no sale had been made. 'This principle is universal,' says Judge Cooley, 'and it is so entirely reasonable as scarcely to need the support of authority. Show the existence of the duty and the disqualification is made out in every instance.'"

The lien holder is not helpless in a situation of this kind. It is not necessary for him to sit idly by and see the property covered by his lien sold for taxes. Section 69-843, Oregon Code 1930, provides that any person having a lien by mortgage or otherwise "upon any land on which the taxes have not been paid may pay or redeem such taxes" and shall have an additional lien on such land for the amount of money so paid, which "shall be collectible with, as part of, and in the same manner as the amount secured by the original lien".

Another reason urged for holding that Livesay did not acquire title to the tract of land free from the debts and obligations of the improvement district is the provision in the law governing the organization of such district to the effect that every owner of land described in the articles of incorporation of a district improvement company is a member of said corporation "and said membership is lost or gained through the respective sale or purchase of any of said land, as the case may be". From this language of the statute it is argued

that the legislature did not intend to say that the lien of state, county or school taxes should be prior to the debts and obligations of the district, but that they should be on a parity. Such would the holding necessarily be, if the purchaser at a tax foreclosure sale took the property burdened with the lien of such debts and obligations.

It was not intended, by stating who should be members of the district, to include a county which became a purchaser at a tax foreclosure sale, any more than it was intended by the language used in the Bancroft Bonding act, supra, to make the land purchased by the county at a tax foreclosure sale subject to a lien for street and sewer assessments. Since the property in the ownership of the county is not subject to the lien of the obligations of the district, it must necessarily follow that a purchaser from the county would acquire the same title and rights to the land that the county had.

When the legislature referred to membership in the district organization it did not intend to include the state, counties or school districts. As was said in *State Land Board v. Campbell,* 140 Or. 196 (13 P. (2d) 396), with reference to the priority of tax liens as against land mortgaged to the State Land Board: ''It is a universally accepted rule that words of a statute applying to private rights do not affect those of the state, and that the sovereign authority is not bound by the general language of a statute which tends to restrain or diminish the powers, rights or interests of the sovereign, and when the rights of a commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied.'' The county of Deschutes, in foreclosing the certificates for delinquent taxes, was acting as an agency of the state, and the same principle of law should apply to it in that

capacity as would apply to the state, were the latter attempting in its own name to enforce the payment of delinquent state taxes.

If the title acquired by the county on foreclosure proceedings or the title acquired by the individual from the county after such foreclosure proceedings is to be burdened with the lien of the debts and obligations of an improvement district, language more explicit should have been used by the legislature than that which refers to membership in the district, and should not be conflicting with the express declaration that the lien for taxes is superior to the lien for the debts and obligations of the district. To hold that the land acquired on a sale for delinquent taxes is still subject to the debts and obligations of the improvement district might, and in many instances doubtless would, defeat the recovery of taxes levied for state, county and school purposes.

In addition to what is hereinbefore said as to the title acquired upon foreclosure proceedings for delinquent taxes, we find in the brief of the appellant, who is attempting to foreclose the lien of his bonds, this statement: "Livesay defended on the ground that he was the grantee of a purchaser at a delinquent tax sale, and plaintiff admitted by a reply that this defense was good, except that he maintained Livesay was a necessary party and would be liable if he used water in the future."

In the oral argument before this court counsel for the appellant conceded that the title acquired by Livesay was free and clear of any lien which had existed in favor of the plaintiff at the time of the tax foreclosure proceedings, and disclaimed any right to foreclose the plaintiff's lien against the property so acquired by Livesay.

Question next arises as to the procedure to be followed in foreclosing the lien granted by the statute to creditors of the district improvement company. It is the contention of the appellant that such lien should be foreclosed pursuant to § 6-501, Oregon Code 1930, in the same manner as liens created by mortgages. The defendants who are respondents here argue that the said section does not apply to liens of this nature and that the proper procedure is to cause assessments to be levied and collected against the property by the improvement district, in the same manner that cities and other municipalities levy and collect assessments for improvements and other obligations.

Reverting to chapter 172, *supra*, we find that § 7 thereof prescribes the duties and powers of the district, including the powers to sue and be sued, to contract and be contracted with, to purchase, condemn by the right of eminent domain, possess and dispose of such real and personal property as may be necessary or convenient to carry into effect the objects of the corporation. Subdivisions 7 and 8 of § 7 specify the following powers of the district improvement company:

"7. To prescribe, fix, make, assess and charge and collect rates, tolls, fees, fines, and charges for the use of water, or for the use of any of the irrigation or drainage works of the company, or for the violation of any of the by-laws, rules and regulations of the company and such rates, tolls, fines, fees and charges shall be a lien on the crops produced as prescribed in section 6544 of Lord's Oregon Laws, and also upon the land to which the water or drainage was furnished.

"8. To make, levy and collect an assessment or assessments either ratably, or in proportion to the benefits received as the by-laws may provide upon the lands described in the articles of incorporation for the purpose of paying any or all of the expenses, debts or obligations of the company; *provided* that in no case

shall there be more than one assessment paid upon any lands in any one year."

Section 9 of the same chapter reads thus:

"The rates, tolls, fees, charges, fines, and assessments for any one year shall become due and payable on or before the first day of October of said year, or as provided by the by-laws of the corporation, and the lien of the same upon any of the lands described in the articles of incorporation may be enforced and foreclosed by a suit in equity and upon the sale of said land on such foreclosure the corporation or any member thereof may be a bidder and purchaser."

In *Rathfon v. Payette-Oregon Slope Irrigation District,* 76 Or. 606 (149 P. 1044), this court held that a district created under chapter 172, Laws 1911, as amended by chapter 101, Laws 1917, was a quasi-public corporation and that the property within its specified area was exempt from inclusion within a state irrigation district. The court further held that the law permitting the creation of such voluntary improvement district had for its object much the same purpose as the irrigation laws of this state. See, also, *Edlredge v. Mill Ditch Co.,* 90 Or. 590 (177 P. 939).

From the above quoted section it is apparent that the district improvement company is given power to raise by assessments against the property within the district the necessary revenue to pay debts and obligations of the district, and is granted a lien on the property for such assessments, with power to enforce the collection of said assessments by a suit in equity.

It is alleged in the complaint and admitted in the answer of all the defendants that the McAllister District Improvement Company is "the owner of an irrigation ditch sometimes known as the McAllister Ditch Company", and that the ditch carries water to the lands described in the complaint.

The bonds involved in this suit contain a provision that "all of the taxable real and personal property of the McAllister ditch which supplies water for irrigation of the McAllister District Improvement Company are hereby pledged for the prompt payment of this bond, and the interest thereon as the same matures". The bonds also contain the following recital: "It is hereby declared that provision has been made in accordance with law by said McAllister District Improvement Company for the levy and collection of assessment sufficient to pay the interest upon this bond as the same matures in accordance with the laws of the state of Oregon." It will therefore be noted that in executing the bonds the district improvement company recognized the necessity of at least making assessments for the payment of interest on these obligations, and the holders of the bonds took with knowledge of that fact. Mandamus proceedings would lie to compel the officers of the district improvement company to make the necessary assessments to raise revenue for the payment of these bonds: *Noble v. Yancey,* 116 Or. 356 (241 P. 335, 42 A. L. R. 1178); *Kollock v. Barnard,* 116 Or. 694 (242 P. 847); *State ex rel. Sondheim v. McClain,* 136 Or. 53 (298 P. 211); *State ex rel. First National Bank of Baker v. Melville,* 149 Or. 532 (39 P. (2d) 1119, 41 P. (2d) 1071).

On the other hand, if the liens of these bonds were to be foreclosed as other liens such as mortgages against the real property, let us see what difficulties would be presented. The statute provides that after filing the notice hereinbefore mentioned "all the debts and obligations of said corporation theretofore or thereafter created shall be a lien upon all the land described in said notice prior to every lien attaching to said land subsequent to the date of recording said notice, except

state, county, and school taxes, whether such debt or obligation of said corporation be in existence at the time such later lien attaches or be created afterwards''. The statute, however, does not specify the priorities of the various liens created by the debts and obligations of the district improvement company.

In the case at bar, according to the amended notice which was filed in 1920, the district comprises over 1,300 acres of land. More than fifty parties were made defendants in this case. In order to foreclose in a suit in equity the lien created by these bonds it would be necessary to make a party defendant every one who had an interest in the land, as well as all those who held mortgages or incumbrances against the land, and all the creditors of the district improvement company, if their liens were to be barred. Every holder of an incumbrance initiated subsequent to the filing of the above notice, in order to protect his lien, would then be forced to appear in court, set forth his lien and ask that it be foreclosed. The question then arises whether all the lands within the district are to be sold to satisfy the liens of creditors of the district improvement company. If all these lands are sold to the highest bidder, how are the creditors of the corporation to be paid? Are the proceeds of the sale, if insufficient to pay all the creditors, to be prorated among them? If the proceeds of the sale exceed the debts and obligations of the corporation, how is the excess to be distributed among the owners of the land and the remaining lien claimants? How would it be possible for the owner of any tract of land within the district to redeem his land from the sale without paying the entire indebtedness of the corporation in addition to the liens created by himself against his own land? And if it be argued that the creditors of the district improvement company may proceed against any

individual tract, then difficulties equally or more serious would be encountered.

It was never intended by the legislature that the lien of the bonds might be satisfied by the bondholders through bringing foreclosure proceedings against the owners of land in the district. By providing that the debts and charges against the district shall be an ''obligation'' on the land within the district, and ''shall run with the land'' the legislature has said in effect that the land in the district shall be held for the debts of the district in like manner as the property within any municipality.

For the reasons here given, I dissent from the majority opinion to the extent of its treatment of the propositions hereinabove discussed.